No. 47,486

Rex L. Vickers, *Appellant,* v. City of Kansas City, Kansas, and State Highway Commission of Kansas, *Appellees.*

(531 P. 2d 113)

Opinion filed January 25, 1975.

*John H. Fields,* of Carson, Fields, Kugler & Boal, of Kansas City, argued the cause, and was on the brief for the appellant.

*Daniel B. Denk,* assistant city attorney, argued the cause, and *Donald E. Martin,* city attorney, *Frank L. Johnson,* of Topeka, and *Wilbur P. McCool,* of Topeka, were with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action by Rex L. Vickers (plaintiff-appellant) against the City of Kansas City, Kansas, and the Kansas State Highway Commission (defendants-appellees) for damages based upon the alleged negligence of the defendants, the creation and maintenance of a nuisance by the defendants and inverse condemnation of plaintiff's real property. During the discovery stage of the lawsuit and prior to docketing the case for trial, the motion of the City for an order pursuant to K. S. A. 1973 Supp. 60-237 dismissing the cause of action was sustained by the trial court for what was held to be the plaintiff's willful refusal to comply with the court's order to produce certain documents and items for the City to inspect and copy. The plaintiff has duly perfected this appeal, contending (1) the trial court abused its discretion in dismissing the action, and (2) there is no competent evidence to support the trial court's conclusion that the plaintiff willfully refused to comply with the order to produce.

The question here for review is whether the trial court abused the exercise of its power of discretion in the dismissal of the plaintiff's cause of action.

The appellees contend the dismissal was based upon the plain-

tiff's failure to comply with an order of the court for production of documents.

This action was commenced by the filing of a petition on May 28, 1971. The first count of the petition alleged that in the process of constructing and maintaining the connecting line in the highway system known as I-635 the natural surface of all the nearby real property was altered, existing waterways were changed and overloaded beyond their capacity, the runoff of surface waters was accelerated and drainpipes and channels were clogged, stopped up and changed which caused waters to accumulate and collect on said highway and the surrounding properties as well, and caused the waters to precipitate in great volume and with great force into, upon and through the plaintiff's real property, damaging the dwelling house situated thereon and every other thing standing in their way. Count One further alleged actual damages in the sum of $5,500, which included the loss of three hot water heaters, two furnaces, sump pumps, tools, supplies, more than 500 yards of sod, rentals from the subject property, the expense of digging out mud, hauling trash, grading and ditching on plaintiff's property, and mental anguish, emotional strain and upset sustained by the plaintiff.

The second count alleged the City of Kansas City has maintained a nuisance in and near the plaintiff's real property since April 24, 1956, by maintaining inadequate and improper drainage facilities in the vicinity of the plaintiff's real property. In the alternative, the plaintiff alleged that both defendants created a nuisance in the process of constructing the city connecting line as described in Count One, to the plaintiff's actual damage in the sum of $5,500.

The third count of the petition alleged the defendants, without plaintiff's consent, and without condemnation, as in the law of eminent domain provided, and without any authority whatsoever, unlawfully appropriated the plaintiff's real property to their use for drainage of the highway right-of-way.

After answers and cross claims were filed by the appellees, the appellant, on November 18, 1971, propounded interrogatories to the City, which were answered in due course. Thereafter, on January 20, 1972, the trial court sustained the appellant's motion for production and permission to copy certain documents in the possession of the City.

The City began discovery procedures by deposing the appellant on December 9, 1971. We are informed the notice for deposition

called only for the appellant's personal appearance and did not request him to bring documents evidencing the special damages claimed in the petition. In substance, the excerpts from the deposition which are contained in the record on appeal disclose that during the deposition the appellant testified that he had made various expenditures as a result of the flooding on his property; such as, having a trench dug, new water heaters, new furnace units and duct work, a new sump pump, tools, etc. However, he did not have cancelled checks or receipts with him at the time of the deposition to document each expenditure, but stated he would produce the documents referred to therein through his counsel. On occasion there was some equivocation by the appellant as to whether or not he actually did possess documentation for particular expenditures, but generally he did state that he would produce the information.

Nothing further occurred in the lawsuit until June 22, 1972, when the appellant filed a praecipe to set the matter for trial, by stating the case was at issue and discovery had been completed. Apparently, no action was taken with regard to the praecipe.

Subsequently, on July 5, 1972, the City moved for an order requiring the appellant to permit the City to inspect and photograph "All receipts, bills, checks paid and invoices for all special damages allegedly suffered by the plaintiff" including, but not limited to "the items discussed in plaintiff's deposition taken on December 9, 1971." An affidavit by the City's counsel attached to the motion declares that during the appellant's deposition, appellant stated he would produce each of the documents referred to in the motion for production; that repeated demands have been made for production of these documents; and that it is believed all of the documents requested for production are relevant to ascertaining the measure of the appellant's damages and further to eliminate surprise and to narrow the issues. The trial court sustained the City's motion on October 2, 1972. No record was made of this proceeding.

The appellant once again filed a praecipe for a docket setting on April 13, 1973. Nothing occurred with respect to this praecipe.

On July 24, 1973, the City moved the court for an order pursuant to K. S. A. 1973 Supp. 60-237, to compel production of documents and items for copying and inspecting, or in the alternative to grant a default judgment in favor of the City and against the appellant for failure to comply with the court's order entered on October 2, 1972.

On August 7, 1973, the appellant filed his third praecipe for trial, but no action was taken concerning it.

On August 9, 1973, a hearing was held on the City's motion to dismiss the appellant's cause of action. After hearing arguments of counsel, the court granted the appellant "additional time until the court's regular motion calendar in September, and that if the plaintiff did not produce in accordance with this court's order that at the time of the hearing on the motion the defendant's motion would be sustained."

For some reason not disclosed by the record on appeal the trial court's regular motion day was not held in the month of September, but was heard by the court on October 5, 1973. At that time, Mr. John H. Fields, the attorney who was handling the appellant's case, had a schedule conflict, so a member of the same firm, Mr. David Boal, appeared on behalf of the appellant, though he was not particularly familiar with the case. No record was made of this hearing. Mr. Boal *tendered* a packet containing a number of documents and, according to the record of a later hearing on the matter, counsel for the City stated Mr. Boal made the statement that the packet contained only a portion of the documents which had been ordered to be produced by the court, and they were dilegently attempting to find the remainder of the documents. Apparently Mr. Boal was not aware of the packet's contents and neither the court nor either counsel looked into the packet. The court sustained the City's motion to dismiss the action and found the appellant had "willfully refused to comply" with the court's order dated October 2, 1972.

At this point we note the order of October 2, 1972, merely "sustained" the City's motion for production of documents. The City in its motion did not by request specify "a reasonable time, place, and manner of making the inspection and performing the related acts." as required by K. S. A. 1972 Supp. 60-234.

Counsel for the appellees in their brief admit the hearing on October 5, 1973, (the regular motion day in September 1973 not having been held) granted the appellant an additional month to produce the documents.

A short time later, the appellant moved the court to set aside the October 5, 1973, order dismissing the appellant's cause of action. The motion states:

"In support of this motion plaintiff advises the court that it is prepared to produce those items in plaintiff's possession which the court has ordered pro-

duced. Plaintiff further advises the court that there are some items which the court has ordered produced which, after diligent search, have not been located by plaintiff. It is plaintiff's intention to continue to locate such items and, immediately upon their being discovered, to produce them in compliance with this court's order."

The hearing on this motion was held November 2, 1973, and a record was made for the first time in the matter. Appellant's counsel explained to the court that during the summer of 1973 he assigned a law clerk employed for the summer to the task of getting together with the appellant to assemble the documents called for in the order for production, and that on August 22, 1973, the appellant mailed a packet of documents he was able to locate to the law clerk. The law clerk returned to school in the latter part of August 1973 and the packet of documents was placed in the case file, where they remained until the October 5, 1973, hearing *when Mr. Boal tendered the packet to the court. The packet contained 39 documents sought by the production order, and they were all tendered at the October 5, 1973, hearing.* It was argued that the appellant had submitted all of the material he could find and that even though some of the receipts and checks could not be found, the failure to produce those items could not constitute willful failure to comply with the court's order. After considering the arguments the court overruled the appellant's motion.

The 39 documents in the packet tendered in open court on October 5, 1973, are appended to the record on appeal. The appellees' motion to strike these documents from the record has heretofore been denied with leave to renew the motion at the hearing on the merits. The appellees have renewed the motion to strike and it is overruled.

To narrow the issue in the instant case the complaint is not that the plaintiff failed to produce, but rather that he failed to produce *all* of the documents he originally thought he had. In his deposition the plaintiff was testifying from memory as to the items contained in his records, and there were a few documents mentioned during his deposition testimony that were never located and hence never produced.

It is the appellant's position, where he testifies from memory at his deposition as to items contained in his records, that he should not be held to do so at the peril if the accuracy of his recollection concerning the items in his records is not absolutely correct—that his cause of action be subject to an involuntary dismissal.

The question concerning the propriety of the order requiring production of the documents in the instant case is not put at issue. The trial court's order requiring the appellant to produce the documents was in response to a motion filed in accordance with K. S. A. 1972 Supp. 60-234. The motion to compel discovery or, in the alternative, for default judgment (dismissal of plaintiff's cause of action) and subsequent orders are governed by K. S. A. 1973 Supp. 60-237.

It is the appellee's position that the order of dismissal entered by the trial court was a just order, and that the entire record before the court illustrated a definite attempt to disregard the court's orders and provided a sufficient basis for the trial court in the exercise of its judicial discretion to dismiss the appellant's cause of action.

It is an elementary principle of law that the purpose of discovery rules is to provide an effective means of detecting and exposing false, fraudulent and sham claims and defenses; to make available, in a simple, convenient, and inexpensive way, facts which otherwise could not be proved except with great difficulty; to educate the parties in advance of trial as to the real value of their claims and defenses; to expedite litigation; to safeguard against surprise; to prevent delay; to simplify and narrow the issues, and to expedite and facilitate both preparation and trial. (23 Am. Jur. 2d, Depositions and Discovery, § 156, p. 493.)

The legislature of our state had seen fit to promulgate discovery rules and regulations by the passage of K. S. A. 60-226 through K. S. A. 60-237. Throughout the statutory procedure the trial court is vested with large amounts of discretion in its direction of pre-trial discovery. Likewise, the trial court is vested with considerable discretion in the enforcement of its previously issued discovery orders and in the assessment of sanctions against noncomplying parties.

K. S. A. 1973 Supp. 60-237 provides to a trial court a series of sanctions, varying in severity, which the court may use against parties unjustifiably resisting discovery. (See, *B. F. Goodrich Tire Company v. Lyster,* 328 F. 2d 411 [5th Cir. 1964].)

The City's motion to compel discovery was filed on July 24, 1973. It is therefore subject to K. S. A. 1973 Supp. 60-237. The pertinent portions of that statute are:

"(*a*) *Motion for order compelling discovery.* A party . . . may apply for an order compelling discovery as follows:

＊　＊　＊　＊　＊　＊

". . . [T]he discovering party may move for an order . . . compelling inspection in accordance with the request. . . .

＊　＊　＊　＊　＊

"(*b*) (2) If a party . . . fails to obey an order to provide or permit discovery . . . the judge before whom the action is pending *may* make such orders in regard to the failure as are *just,* and *among others* the following:

＊　＊　＊　＊　＊

"(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

"(C) An order strikng out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

＊　＊　＊　＊　＊

"In lieu of any of the foregoing orders or in addition thereto, the judge shall require the party failing to obey the order . . . to pay the reasonable expenses, . . . caused by the failure, unless the judge finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." (Emphasis added.)

It should be noted that the foregoing section specifically spells out certain sanctions which are said to be "among others". (See further, K. S. A. 1973 Supp. 60-237 [*d*] [3].)

The above statute is identical to Federal Rule 37. Kansas decisions in point are limited or do not exist, so federal decisions must be relied upon heavily for authority in the construction of the statute. (*Williams v. Consolidated Investors, Inc.,* 205 Kan. 728, 472 P. 2d 248.)

The statute specifies that a judge "may make such orders in regard to the failure [to comply] as are just." This language on its face compels the conclusion that the legislature intended to vest discretion in the trial judge to decide among the various alternative orders available to him, and to choose the most appropriate sanction suitable to the history and circumstances of the case before him. The Fifth Circuit Court of Appeals has stated this proposition as follows:

". . . [T]he language of Rule 37 (*d*) makes clear that the application of sanctions is entrusted to the discretion of the trial judge. . . ." (*Diaz v. Southern Drilling Corp.,* 427 F. 2d 1118, 1126 [5th Cir. 1970].)

In *Reedy v. Reedy,* 175 Kan. 438, 264 P. 2d 913 judicial discretion is defined as:

". . . Discretion may be defined as the freedom to act according to one's judgment. Judicial discretion implies the liberty to act as a judge should act, applying the rules and analogies of the law to the facts found after weighing and examining the evidence—to act upon fair judicial consideration and not arbitrarily. . . ." (p. 440.)

The guideline given trial courts as to when they have abused the discretion granted them was rather succinctly stated in *Stayton v. Stayton*, 211 Kan. 560, 506 P. 2d 1172, as follows:

". . . [D]iscretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by trial court then it cannot be said that the trial court abused its discretion. . . ." (p. 562.)

Exactly what type of failure to comply with the trial court's discovery orders allows a judge, in the exercise of his power of judicial discretion, to grant the most severe sanction available to him (*see, Williams v. Consolidated Investors, Inc.,* supra) appears to have historically been a battle of semantics in the federal courts. The United States Supreme Court and the various Federal Circuit Courts of Appeals and district courts have in the construction of the pre-1970 amendment to Rule 37 of the Federal Rules of Civil Procedure (K. S. A. 60-237 was amended effective on January 1, 1973, by the Supreme Court to comply with the 1970 federal amendment) attempted to construe the word "refusal" in its context in Rule 37. The question before these courts has been whether "refusal" requires "willfulness." (*Roth v. Paramount Pictures Distributing Corporation,* 8 F. R. D. 31 [W. D. Pa. 1948]; *Campbell v. Johnson,* 101 F. Supp. 705, 707 [S. D. N. Y. 1951]; and *Hinson v. Michigan Mutual Liability Company,* 275 F. 2d 537 [5th Cir. 1960].) This question now appears to have been settled by the 1970 amendment to Federal Rule 37 and the 1973 amendment to K. S. A. 60-237 by the substitution of the word "failure" for the word "refusal" throughout these legislative amendments. Substitution of "failure" for "refusal" throughout Rule 37 was designed to eliminate confusion and bring the rule into harmony with *Societe Internationale v. Rogers,* 357 U. S. 197, 2 L. Ed. 2d 1255, 78 S. Ct. 1087.

In 1958 the United States Supreme Court held in *Societe,* supra, that a party "refuses to obey" a production order simply by failing to comply with it, and that willfulness was not required. The court went on to determine that a dismissal of an action under Rule 37 was not a proper sanction if the failure to make discovery was "due

to inability" and not due "to willfulness, bad faith or any fault" of the party who failed to comply with the order for production.

This court discussed the rule in 60-237 (*b*) (2) in *Williams v. Consolidated Investors, Inc.,* supra, as follows:

"The penalties permitted by 60-237 (*b*) (2) are not to be imposed for the failure to comply with a production order in the absence of an ability to produce, where a party's failure to produce is shown to be due to inability fostered neither by his own conduct nor by the attendant circumstances of the case. (*Read v. Ulmer,* 308 F. 2d 915.) While 60-237 (*b*) (2) applies to all failures to comply, either willful or not, the presence or lack of good faith in the parties is relevant to the orders which should be given and the severity of the sanctions imposed. (*B. F. Goodrich Tire Company v. Lyster,* 328 F. 2d 411, 415.) The sanction of judgment by default for failure to comply with a production order is the most severe sanction which the court may apply, and its use must be tempered by the careful exercise of judicial discretion to assure that its imposition is merited. However, where a party has acted in willful and deliberate disregard of reasonable and necessary orders of the court and the efficient administration of justice, the application of a stringent sanction is fully justified and should not be disturbed. (*Trans World Airlines, Inc. v. Hughes,* 332 F. 2d 602.) See, also, *Ronnau v. Caravan International Corporation,* 205 Kan. 154, 468 P. 2d 118." (p. 733.)

Rules of procedure are a means of attaining justice and not an end to justice. In final analysis, a court has a responsibility to do justice between man and man. General principles cannot justify denial of the parties their day in court except upon a serious showing of willful default (*Gill v. Stolow,* 240 F. 2d 669 [2d Cir. 1957]).

Where a party fails to comply with a production order in the course of discovery proceedings, the trial court is required in the exercise of its power of judicial discretion to determine which of the variety of available sanctions it will impose by its judgment. In making this determination the trial court should consider whether or not the documents to be produced go to a dispositive issue in the case, and whether the party seeking discovery may therefore be protected by the imposition of a sanction short of dismissal. (*Bernat v. Pennsylvania R. Co.,* 14 F. R. D. 465, [E. D. Pa. 1953].) Another factor to consider in making this determination is whether the party ordered to produce has failed to comply due to his inability to comply with the order, and not due to willfulness or bad faith. (*Societe Internationale v. Rogers,* supra.)

On the facts in this case the documents in question do not go to a dispositive issue in the case, but are merely corroborative of the deposition testimony of the appellant concerning items of special damage alleged in the negligence and the nuisance counts of his

petition. By a third count in the petition the appellant sought relief for the taking of property by inverse condemnation—the taking of a permanent drainage easement across his property. The documents in question are totally irrelevant to this third count. Dismissing the appellant's cause of action for failure to comply with the production order was the most severe sanction which the court could impose.

As we read the record the appellant made a good faith effort to comply with the order of the court by tendering 39 documents which had been ordered. These documents were tendered within the time period authorized by the trial court's order of production. The statement made by Mr. Boal at the hearing on October 5, 1973, that the tendered documents were only a portion of the documents which had been ordered to be produced and that plaintiff was diligently attempting to find the remainder of the documents, was subseqently clarified by Mr. Fields, who was familiar with the case, at the hearing on November 2, 1973, on the appellant's motion to set aside the court's order of October 5, 1973. It is significant to note that although the 39 documents were tendered at both the October 5, 1973, hearing and November 2, 1973, neither the trial court nor counsel for the City expressed any interest in examining them.

In opposing the motion of the appellees for default judgment the appellant made it known that he had searched diligently for the documents but was unable to locate all of them. He further stated, through counsel, that he would produce the remaining documents immediately should they be located. Under all of the circumstances presented by the record herein we do not believe a dismissal of the action was required or warranted. The provisions of 60-237 (*b*) (2) gives the court discretion to grant other relief. An order prohibiting the appellant from introducing any exhibit at the trial not produced or any testimony concerning an item of special damage which was the subject of the motion for production as authorized in 60-237 (*b*) (2) (B), *supra,* would have been an effective sanction, if imposition of any sanction was appropriate in these circumstances. Inasmuch as the appellant has the ultimate burden of proof, and inasmuch as the documents in question merely corroborated his testimony and make it more believable, the appellant is in no position to gain by his inability to find and produce all of the documents in question. This factor was recognized in *Societe Internationale v. Rogers,* supra, where the court said:

"This is not to say that petitioner will profit through its inability to tender the records called for. . . . It may be that in a trial on the merits, peti-

tioner's inability to produce specific information will prove a serious handicap in dispelling doubt the Government might be able to inject into the case. . . . But these problems go to the adequacy of petitioner's proof and should not on this record preclude petitioner from being able to contest on the merits." (pp. 212, 213.)

We find the trial court abused the exercise of its power of discretion in dismissing the appellant's cause of action.

The judgment of the lower court is reversed with directions to reinstate the appellant's cause of action.

FROMME, J., concurs in the result.