No. 48,250

STATE OF KANSAS, *Appellant*, v. GARY A. WILKINS, *Appellee*.

(556 P. 2d 424)

Opinion filed November 6, 1976.

*Albert D. Keil*, assistant district attorney, argued the cause, and *Curt T. Schneider*, attorney general, and *Gene M. Olander*, district attorney, were with him on the brief for the appellant.

*Thomas L. Theis*, of Topeka, argued the cause. and *Gary E. Laughlin* also of Topeka, was with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: This is an interlocutory appeal by the state from a ruling made by the trial court striking the testimony of two prosecution witnesses. The sole question presented is whether the trial court abused its discretion.

There was an attempted armed robbery and aggravated battery at a Topeka liquor store on April 23, 1975. Gary A. Wilkins, the

appellee herein, was arrested and charged with the crime. A jury trial was commenced on September 1, 1975. The defense was alibi. The state called three witnesses to identify the defendant as the perpetrator of these crimes. The victim, Hugh Harkin, identified the defendant as his assailant. Michael Noyes testified that he saw the defendant entering the liquor store at about the time in question, and later saw the defendant leaving shortly after he heard what sounded like a gun shot. Cluster Morris, who had been with Noyes at the time of the occurrence, was unable to identify the defendant. Both Noyes and Morris testified that on the evening of the occurrence, they went to the Topeka Police Department and gave signed written statements, including the physical description of the person they saw entering and leaving the store. Shortly after Morris left the witness stand, the prosecutor attempted to recall him. At that time defense counsel requested, and the court ordered, production of the statements of both Noyes and Morris, pursuant to K. S. A. 22-3213 (2). After a recess, during which the state was unable to locate the statements, a mistrial was declared upon motion of the defendant.

A hearing was then held on January 27, 1976, before the trial judge on the question of whether or not the state would be allowed to use the testimony of Noyes and Morris concerning the identity of the defendant, since the state was unable to produce written statements of the witnesses. Counsel for the state advised the court that a search was made of the police department's files and records, but the written statements of the witnesses were not located. The detectives recalled talking with both Noyes and Morris, but none had a specific recollection of taking statements. The detectives acknowledged, however, that the usual procedure then followed would have been to take written statements from the witnesses, and one detective thought he recalled seeing the statements. The only thing found was a yellow sheet of paper on which one of the detectives had written Mr. Noyes' name and address and two descriptions, which he believed were the descriptions given him by Noyes. This document was not signed.

At the conclusion of the hearing the court found that Noyes and Morris did make statements to law enforcement officials; that the defendant has a right to these statements under K. S. A. 22-3213 (2); that the failure to produce them would be prejudicial to his right to an effective cross-examination; and that the failure to produce the statements "is not the result of any bad faith on behalf

of the state or a willful disregard of the court's order." The court conditionally ordered the testimony of the two witnesses stricken from the record of the trial, and ruled that Noyes and Morris could not be called on behalf of the state to identify the defendant unless the statements are found and produced. It is this order from which the state appeals.

The statute, K. S. A. 22-3213 (2) provides in applicable part:

"After a witness called by the state has testified on direct examination, the court shall, on motion of the defendant, order the prosecution to produce any statement . . . of the witness in the possession of the prosecution which relates to the subject matter as to which the witness has testified. . . ."

We have considered this statute several times since its enactment. In *State v. Wigley*, 210 Kan. 472, 478, 502 P. 2d 819, we referred to the statute as the "Little Jencks Act," and we held that failure of a trial court to order production of the statement of a prosecution witness was not error in the absence of a timely motion for its production by the defendant. In *State v. Stafford*, 213 Kan. 152, 158, 159, 515 P. 2d 769 (other portions of the opinion modified and rehearing denied, 213 Kan. 585, 518 P. 2d 136), we held that a police officer called by the state to testify on direct examination as to facts revealed by his investigation is a witness within the meaning of K. S. A. 22-3213 (2), and that the defendant is entitled to the production of any statement or report made by the officer in possession of the prosecution relating to the subject matter of the witness' testimony. In discussing the act we said:

"K. S. A. . . . 22-3213 is patterned after the Jencks Act. . . . There are only two differences between our statutes and the federal act: First, the Jencks Act permits the prosecuting attorney to elect not to comply with the court's order to produce a statement subject to the condition that the testimony of the witness be stricken or mistrial declared; and, second, our act requires production after a witness has testified at a preliminary hearing as well as at trial. Neither of these differences supplies reason for departure from the construction applied by the federal courts. . . ."

In *State v. Humphrey*, 217 Kan. 352, 537 P. 2d 155, we construed K. S. A. 22-3213 so as to require the state to disclose statements or reports of witnesses, relating to the subject matter about which the witness has testified, where the report or statement is in the possession not only of the prosecutor but of any state law enforcement agency. We said:

". . . To hold otherwise would enable a county attorney to defeat the purpose of the discovery rule by the simple process of removing statements and reports from his personal file. In view of the importance of such statements

and reports in testing the credibility of a state's witness, we believe that such a requirement will better achieve the purpose of the Kansas Code of Criminal Procedure." (p. 357.)

Also, in *Humphrey,* we acknowledged the right of effective cross-examination, where the credibility of a witness can be subjected to exploration, as a part of the constitutional right of confrontation of witnesses.

Subsection (d) of the Jencks Act, 18 U. S. C. § 3500, is not included within the Kansas Act, K. S. A. 22-3213; otherwise, the statutes are virtually identical. The excluded provision reads as follows:

"(d) If the United States elects not to comply with an order of the court under paragraph (b) or (c) hereof to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared."

The omission has little effect; certainly the omission does not deny to a trial court the authority to strike testimony from the record, or take other appropriate steps when the court's order and the mandate of the statute are violated. A trial court has inherent power to enforce its orders. *State v. Miller,* 169 Kan. 1, 10, 217 P. 2d 287; *State v. Brady,* 156 Kan. 831, 841, 137 P. 2d 206. In so doing the court is required to exercise its sound discretion. As the United States Supreme Court observed in *Palermo v. United States,* 360 U. S. 343, 353, 3 L. Ed. 2d 1287, 79 S. Ct. 1217, and *United States v. Augenblick,* 393 U. S. 348, 355, 21 L. Ed. 2d 537, 89 S. Ct. 528, the administration of the Jencks Act must be entrusted to the "good sense and experience" of the trial judges subject to "appropriately limited review of appellate courts."

In *United States v. Bryant,* 439 F. 2d 642 (D. C. Cir. 1971) an investigative agent had failed to retain a tape recording, allegedly made at the time of the sale of narcotics. The court said:

". . . [B]efore a request for discovery has been made, the duty of disclosure is operative as a duty of preservation. Only if evidence is carefully preserved during the early stages of investigation will disclosure be possible later.

"In the cases before us, . . . the issue is whether full sanctions for non-disclosure ought to be invoked absolutely, or whether imposition of sanctions ought to depend upon the circumstances of the material's disappearance.
. . .

". . . An exception for good faith loss of important evidence must not be allowed to swallow the discovery rules, and the burden of explanation on

the government must be a heavy one; but criminal convictions otherwise based on sufficient evidence may be permitted to stand so long as the Government made 'earnest efforts' to preserve crucial materials and to find them once a discovery request is made.

". . . [W]e hold that sanctions for non-disclosure based on loss of evidence will be invoked in the future unless the Government can show that it has promulgated, enforced and attempted in good faith to follow rigorous and systematic procedures designed to preserve *all* discoverable evidence gathered in the course of a criminal investigation. The burden, of course, is on the Government to make this showing. Negligent failure to comply with the required procedures will provide no excuse.

.    .    .    .    .    .    .    .    .    .    .    .    .

". . . On remand here the District Court should weigh the degree of negligence or bad faith involved, the importance of the evidence lost, and the evidence of guilt adduced at trial in order to come to a determination that will serve the ends of justice." (pp. 651, 652, 653.)

On a later appeal after remand, *United States v. Bryant,* 448 F. 2d 1182 (D. C. Cir. 1971), the court noted that though the record was very clear that the agent made no effort to preserve the tape, and that such extremely negligent conduct would in the future result in the imposition of full sanctions, the conviction would be affirmed upon the district court's finding, upon remand, that the tape was almost entirely unintelligible, and would have been of little use to the appellants. Under the balancing approach, considering the unintelligibility of the tape and the very strong evidence of guilt, the convictions were affirmed.

Again in *United States v. Perry,* 471 F. 2d 1057 (D. C. Cir. 1972) the court adopted a balancing approach, giving broad discretion to the trial court. It held that, even if the trial court found some degree of negligence on the part of the government in the loss of Jencks Act material, if the court found that the risk of prejudice to the defense was slight, it could refuse to impose sanctions. In *Perry,* the lost material consisted of notes of an independent reporting firm which had taken the testimony of witnesses before a grand jury. In discussing the Jencks Act, the court said:

"Viewed in its proper perspective, the judicial process *is* a search for truth, not an adversary game, and therefore the Jencks Act is not a mandate compelling the trial judge to strike (or bar) a witness' testimony when a previously made statement, irrespective of the reason, cannot be produced by the Government. On the other hand, the Government does not necessarily exonerate itself from the penalty of the statute by pleading so-called 'good faith.' Instead, the trial judge's effort must be to see that the defendant has access to previous statements of a witness to the fullest extent possible under the terms of the statute, in order to further the interests of justice in the search for

truth. Whether the testimony of a witness is stricken or barred in advance, however, is in the discretion of the trial judge if eliminating the witness' testimony would restrict the search for truth rather than assist it in the instant and future cases.

"Ordinarily, excluding evidence will assist this search only where the information has been lost or destroyed, negligently or for an unjustified purpose. . . . It is undenied that the United States does not have 'possession' of the statement, a fact which alone does not settle the matter. The United States might have 'elected' to destroy the statement, which would then have given rise to inquiry as to motive and effect, as to purpose and prejudice. Or it might have acted negligently, and the policy of the statute, the quest for truth, is undercut as much by governmental negligence as by intentional acts of destruction. . . ." (p. 1063.)

In *United States v. Principe*, 499 F. 2d 1135 (1st Cir. 1974), the First Circuit also adopted the balancing test. It held that a failure to disclose Jencks Act material on the part of the government does not automatically require the striking of the witness' testimony or a mistrial. The court said that *a weighing of considerations* is needed to determine the appropriate course.

*Krilich v. United States*, 502 F. 2d 680 (7th Cir. 1974), was an appeal by petitioner from the denial of his motion to vacate, filed pursuant to 28 U. S. C. § 2255, the federal counterpart to our K. S. A. 60-1507. Krilich was denied access to a report prepared by an Internal Revenue Agent who testified on behalf of the government. The court said:

". . . Where the government fails to comply with the requirements of the Jencks Act, a conviction should be reversed unless it is *perfectly clear* that the defense was not prejudiced by the omission. . . ." (p. 686.)

*Lewis v. United States*, 340 F. 2d 678 (8th Cir. 1965), was a direct appeal from a conviction of a narcotics violation. The trial court had reviewed the Jencks Act material, found nothing in it conflicting with the witness' testimony and denied defense counsel access to the documents. The Eighth Circuit found this to be error and said:

". . . [I]t is no part of the trial court's function to speculate as to whether or not an otherwise producible statement under the Jencks Act will be of any use to the defendant for impeachment purposes. . . . The function of the trial court under § 3500, Title 18, U. S. C. A., is limited purely to the question of producibility, i. e. * * * is the document a 'statement' under the Act? Does it relate to the subject matter of the witness' testimony? The use of extrinsic evidence to determine that matter is permissible, and generally the Court should determine the same at a hearing out of the presence of the jury. . . . Once *producibility* is established the defendant has an absolute right to the statement, or, in the alternative, to have the testimony of the wit-

ness stricken if the Government refuses to comply, and failure to so order is reversible error. . . .

". . . [However,] from a consideration of the whole record before us, we think the District Court's action and conduct in relation to the Jencks Act claim of error here made can only be considered and deemed to be harmless. Appellant's guilt of the charge as made against him . . . was established beyond a reasonable doubt by competent testimony other than that as given by Witness Hill." (pp. 672, 684.)

In *State v. Solem*, 220 Kan. 471, 552 P. 2d 951, we were concerned with the failure of the state to locate and produce an alleged tape recording pursuant to K. S. A. 22-3212 (1) (*a*). We there held that the failure of the prosecution to locate the tape recording which *might* have been made did not necessitate dismissal of the charges against the accused. There was no finding, in *Solem*, that the recording sought ever existed.

Here we are concerned with written statements of two prosecution witnesses given on the date of the offense to investigating officers, and which statements were lost or mislaid by the state. Those charged with the investigation of crimes have a duty, in the first instance, to preserve evidence during the entire process of investigation, and to that end appropriate rules and regulations should be adopted and enforced by investigative agencies. The statutes mandating disclosure require such preservation.

The trial judge here carefully considered the entire matter. In his remarks he alluded to the taking of the statements; to their loss by the state, and the state's failure to produce them; to the materiality and importance of the statements; and to the resulting prejudice to the defendant's right to an effective cross-examination. He emphasized that the order made was conditional, and that it would be reconsidered in the event the statements surfaced before trial. He recognized that the state had yet an eyewitness, the victim, and he denied defendant's motion to dismiss the charges against him.

A trial court exercising its discretion in ruling upon a motion to strike the testimony of a witness for failure of the prosecution to produce a statement pursuant to K. S. A. 22-3213 (2), should consider why the statement was not produced; if it was lost, the facts and circumstances surrounding the loss; the negligence or fault on the part of the state; the nature, relevance and importance of the statement; the risk of prejudice to the defendant; the essentiality of the testimony to the state; and the other evidence in the case. The administration of the "Little Jencks Act" is thus entrusted to the

sound discretion of the trial judges, who must use the "balancing approach" described in the cited cases in determining what sanctions, if any, to apply.

Similarly, where a party to a civil action fails to comply with an order for discovery, we have held that the trial court in the exercise of sound judicial discretion must consider the materiality and importance of the documents not produced, whether the failure to produce is caused by inability, willfulness or bad faith, and whether some available sanction short of dismissal will protect the party seeking discovery. *Vickers v. City of Kansas City*, 216 Kan. 84, 93, 531 P. 2d 113. In speaking of judicial discretion, we there said:

"Discretion may be defined as the freedom to act according to one's judgment. Judicial discretion implies the liberty to act as a judge should act, applying the rules and analogies of the law to the facts found after weighing and examining the evidence—to act upon fair judicial consideration and not arbitrarily. (Syl. 4.)

"Discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court then it cannot be said the trial court abused its discretion." (Syl. 5.)

The statements of these two witnesses are particularly important and germane to the principal issue in this case—the identity of the assailant. The trial court found them to be highly material, and found that their loss was indeed prejudicial to the defendant's right of cross-examination. The testimony of the two witnesses was not essential—though desirable—to the prosecution. We are convinced that the trial judge carefully weighed the equities and did what in his view was just under the circumstances.

Upon a careful consideration of the facts and circumstances disclosed by this record, and with careful application of the principles above discussed, we hold that the able trial judge did not abuse his discretion in entering a conditional order, striking the testimony of the two prosecution witnesses.

The judgment is affirmed.

FATZER, C. J., dissenting:

I must respectfully dissent from paragraph 5 of the syllabus of the court, and the corresponding portion of the court's opinion.