No. 87,904

STATE OF KANSAS, *Appellee*, v. GREGORY L. KESSLER, *Appellant*.
(73 P.3d 761)

Opinion filed August 1, 2003.

*Cory D. Riddle*, assistant appellate defender, argued the cause, and *Randall L. Hodgkinson*, deputy appellate defender, was with him on the brief for appellant.

*Lesley A. Isherwood*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

GERNON, J.: This is the direct appeal by Gregory L. Kessler in which he challenges his convictions for two counts of aggravated indecent liberties with a child and the sentences imposed for those convictions. This court has jurisdiction by transfer on its own motion pursuant to K.S.A. 20-3018(c).

The jury made special findings that both convictions involved a fiduciary relationship. The trial court used the special findings to impose an upward durational departure on one of the convictions.

Kessler has a son, C.L.K., by K.L. C.L.K. was born in 1990. After Kessler and K.L. were divorced, Kessler saw C.L.K. approximately every other weekend from January 1999 through July 1999, usually staying at the mobile home of a friend.

K.L. became concerned about the visits after C.L.K. told her that Kessler, apparently a heavy drinker, had urinated on C.L.K. while he was sleeping. Some months later, K.L.'s sister wrote K.L. and suggested that she ask C.L.K. what Kessler had done to him. C.L.K. informed K.L. that Kessler had "touched his wiener." K.L. failed to report this information, reasoning that C.L.K.'s visits with Kessler had been cut off and she did not want to embarrass C.L.K.

K.L. sought advice from an attorney on filing for full custody of C.L.K. with no visitation rights after Kessler contacted her about resuming visitation. The attorney advised K.L. to report the "touching" incident to the Department of Social and Rehabilitation Services (SRS). K.L. reported the incident to SRS on July 28, 2000.

C.L.K. was interviewed by a SRS worker and a law enforcement officer, Detective Riddle. During the interview, C.L.K. stated that Kessler had touched him inappropriately four times, twice on one day and twice the next day. Later, C.L.K. stated that Kessler touched C.L.K.'s penis four times and his buttocks one time. According to C.L.K., Kessler touched him under C.L.K.'s clothing. C.L.K. also supplied other details, such as where the acts took place and what Kessler was wearing. C.L.K. asked Kessler to stop after the first touching, to which Kessler replied, "I can do anything I want to," and then touched C.L.K. again.

The trial court admitted C.L.K.'s taped interview into evidence and played it for the jury. Kessler presented the testimony of two character witnesses in his defense. The jury convicted Kessler of both counts of aggravated indecent liberties.

The trial court denied Kessler's motions for a new trial and for judgment of acquittal. Regarding the State's motion for upward durational departure, the court accepted the jury's special finding of a fiduciary relationship and departed upwardly on the sentence for count one. The court sentenced Kessler to 128 months on count one and 49 months on count two, with the sentences ordered to run consecutively. Kessler appeals.

## MULTIPLICITY

Kessler first contends on appeal that the convictions are multiplicitous. Whether convictions are multiplicitous is a question of law over which this court has unlimited review. *State v. Schuette*, 273 Kan. 593, 600, 44 P.3d 459 (2002); *State v. Robbins*, 272 Kan. 158, Syl. ¶ 8, 32 P.3d 171 (2001).

Multiplicity is the charging of a single offense in several counts of a complaint or information. *Schuette*, 273 Kan. at 600. The concept of multiplicity is based on the merger of charges. Multiplicity has been part of Kansas law since this court's decision in *State v. Colgate*, 31 Kan. 511, 515, 3 Pac. 346 (1884), in which the court stated: "[U]pon general principles a single offense cannot be split into separate parts, and the supposed offender be prosecuted for each of such separate parts, although each part may of itself con-

stitute a separate offense." See *State v. Garcia*, 272 Kan. 140, 143, 32 P.3d 188 (2001).

The principal danger of multiplicity is that it creates the potential for multiple punishments for a single offense. Multiple punishments for a single offense are prohibited by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10 of the Kansas Constitution Bill of Rights. *Schuette*, 273 Kan. at 600; *Garcia*, 272 Kan. at 143.

In this case, Kessler was charged with two counts of aggravated indecent liberties pursuant to K.S.A. 21-3504(a)(3)(A). The language in the complaint/information was identical on both counts. Each charge alleged that between January 1, 1999, and July 31, 1999, Kessler did

"unlawfully, lewdly fondle or touch C.L.K., a child under fourteen (14) years of age, to-wit: eight (8) years of age, date of birth of September 24, 1990, who was not then married to [Kessler], done with the intent in [Kessler] to arouse or satisfy the sexual desires of C.L.K., [Kessler], or both."

The only distinction between the charges was the special allegation in count one that the offense involved a fiduciary relationship that existed between Kessler and C.L.K.

The prosecutor recognized a potential multiplicity problem during the jury instruction conference. The prosecutor referred the trial court to an unpublished decision addressing the issue. After reviewing the unpublished decision, the trial judge determined that the issue of multiplicity could be addressed by identifying count one and count two as two separate and distinguishable acts. After both counsel suggested a manner in which to make this distinction, the trial court adopted defense counsel's proposal for altering the jury instructions and modified the jury instructions on both counts with no objection.

The court instructed the jury on count one as follows:

"In Count One (1) the defendant, Gregory L. Kessler, is charged with the crime of aggravated indecent liberties with a child. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

1. That [Kessler] fondled or touched the person of C.L.K., to-wit: his *penis*, in a lewd manner, with intent to arouse or satisfy the sexual desires of either C.L.K. or the defendant or both;

2. That at the time of the act C.L.K. was a child under the age of 14; and

3. That this act occurred on or between January 1, 1999, and July 31, 1999, in Sedgwick County, Kansas.

"As used in this instruction, lewd fondling or touching means: a fondling or touching in a manner which tends to undermine the morals of a child, which is so clearly offensive as to outrage the moral senses of a reasonable person, and which is done with the specific intent to arouse or satisfy the sexual desires of either the child or the offender or both. Lewd foundling or touching does not require contact with the sex organ of one or the other." (Emphasis added.)

The instruction in count two differed only in that for the first element of the offense it stated:

"1. That [Kessler] fondled or touched the person of C.L.K., to-wit: his *buttocks*, in a lewd manner, with intent to arouse or satisfy the sexual desires of either C.L.K. or the defendant, or both . . . ." (Emphasis added.)

At the oral argument on his motion for a new trial, Kessler argued, for the first time, that his convictions were multiplicitous. Kessler asserted that his convictions were based on one continuous act. In response, the State pointed to C.L.K.'s testimony that he had been molested on two separate dates. Kessler did not raise multiplicity in his written motion for a new trial.

On appeal, Kessler acknowledges that C.L.K. testified about being touched on two separate occasions, his penis on the first night and his penis and the buttocks on the second night. Offenses are not multiplicitous if they are committed separately and severally at different times and in different places. *Schuette*, 273 Kan. at 600; *State v. Hill*, 271 Kan. 929, Syl. ¶ 3, 26 P.3d 1267 (2001). Kessler admits that if count one represented the touching on the first night and count two represented the touching on the second night, there was no multiplicity. Kessler contends, however, that the jury could have convicted him for both counts based on the touchings that occurred on the second night. If so, multiplicity exists because the touchings on the second night were part of one continuous act.

The State asserts that when C.L.K.'s testimony is coupled with the prosecutor's closing argument, no multiplicity exists. In closing argument, the prosecutor referred to the fact that count one "involves the penis." As for count two, the prosecutor stated: "Regarding Count Two. The fondling is the second incident where

[Kessler] touches [C.L.K.] on the buttocks and then goes back to the penis again." The prosecutor also stated: "I'll ask that you find the defendant guilty of both counts, for molesting his son's penis and for molesting his son's buttocks."

During rebuttal in closing argument, however, the prosecutor made this statement:

"Did it happen two times or did the [*sic*] happen four times? That's talking about the touching of the penis, Folks, and what you must remember when you go to the elements instruction is this: You must all agree that it happened one time. If you do not find that it happened three or four times, that's fine.

"What you all must agree about is that it happened once, the touching to the penis. What you all must agree about regarding Count Two is that it happened once to the buttocks. That's the focus of the elements."

We note that the facts in this case are not those that normally arise in a multiplicity case. In traditional multiplicity cases, defendants are faced with multiple charges that arise from a series of acts that arguably constitute one continuous incident, *i.e.*, acts that are not separated by a clear and substantial break in the events. See, *e.g.*, *State v. Richmond*, 250 Kan. 375, 827 P.2d 743 (1992); *State v. Howard*, 243 Kan. 699, 763 P.2d 607 (1988); *State v. Dorsey*, 224 Kan. 152, 578 P.2d 261 (1978). However, in this case, there are two separate and distinct incidents separated by the span of an entire day that would support both charges of aggravated indecent liberties. Any confusion here comes as a result of the instructions given, not as a result of a multiplicity issue.

The potential of multiple punishments for the same offense exists in this case only as a result of conjecture and speculation as to the particular incident the jury relied upon in convicting Kessler on count one. Kessler asks this court to find that based on the instructions, the prosecutor's closing argument, and the facts of the case, a reasonable juror could have found that the only touchings that occurred were on the second night when both the penis and the buttocks were alleged to have been touched and that, therefore, the jury's finding is multiplicitous and in violation of double jeopardy.

This court was faced with a similar factual scenario in *State v. Dotson*, 256 Kan. 406, 886 P.2d 356 (1994). In *Dotson*, the de-

fendant was charged with and convicted of eight sexual felonies involving four different victims. On appeal, Dotson argued that he had been denied the opportunity to present a complete defense to the charges because the pleadings had been framed in general terms and were vague, thereby depriving him of the possible defense that the charges were multiplicitous.

Dotson was charged with one count of indecent liberties and two counts of sodomy against Mitchell, with all counts alleged to have occurred during the same 1-year time period. Mitchell testified at trial to multiple incidents that would have supported Dotson's conviction on all three counts; however, no identifiable specific incidents were established. Likewise, Dotson was charged with two counts of aggravated criminal sodomy involving Brett over an identical time span. Brett also failed to testify regarding specific instances but testified that he was sodomized on numerous occasions. Finally, Dotson was charged with indecent liberties and aggravated criminal sodomy involving Joseph over an identical time span. Joseph testified to fondling and sodomy, which occurred four or five times, but failed to testify to any specific occasion.

Like Kessler, Dotson argued that, because of the form of the complaints and the evidence, the jury could have found all charges relating to a particular child occurred on the same night. Thus, Dotson argued that if this is what happened, the charges were multiplicitous. Dotson claimed that he was denied the right to raise the defense of multiplicity because of the form of the complaint and the evidence. The *Dotson* court noted that there was no claim that the complaints contained multiplicitous counts. Finding that it was pure speculation by Dotson that the jury could have believed that the sexual events occurred but disbelieved the testimony that the acts occurred on more than one occasion, the court found Dotson's claim to be meritless. 256 Kan. at 411-12.

Here, as in *Dotson*, the testimony was clear. C.L.K. testified that on the first night he spent with Kessler, Kessler reached under C.L.K.'s underwear and fondled him, and that on the second night, Kessler did the same. During closing arguments, the prosecutor made specific references to the first night's events, which involved the touching of C.L.K.'s penis, and to the second night's events,

which involved the touching of C.L.K.'s buttocks first, and then his penis.

We conclude that the evidence at trial supported the finding of two separate and distinct acts that would have supported the two charges of aggravated indecent liberties. From the cold record, the evidence of the touchings that occurred on the first night was as reliable as the evidence of the touchings that occurred on the second night. Kessler did not offer separate defenses to each count but, instead, attempted to undercut C.L.K.'s and K.L.'s credibility. The jury clearly believed C.L.K.'s testimony. Thus, there is no reason to infer that the jury believed C.L.K.'s testimony regarding the fondling on the second night while disbelieving his testimony regarding the fondling on the first night.

Additionally, the prosecutor clarified the charges during closing argument, further negating Kessler's claim of error. The prosecutor specifically referred to count one as the fondling of C.L.K.'s penis on the first night and to count two as the fondling of his buttocks on the second night. The jury was instructed to use their "common knowledge and experience in regard to the matter about which a witness has testified" and that "[e]ach crime charged against [Kessler was] a separate and distinct offense." Based on the combination of the prosecutor's clarification and the instructions given, there is no reason to believe the jury was confused about the charges against Kessler.

While the better practice would be for the jury instructions to specify the differences in the dates of the events charged or some other specific characteristic of the events to avoid any suggestion of confusion, the totality of the facts here allows us to conclude that failure to do so does not require reversal.

## VOLUNTARY INTOXICATION INSTRUCTION

Kessler contends the trial court erred in denying his request and failing to instruct the jury on voluntary intoxication.

Kessler requested the trial court to instruct the jury on voluntary intoxication, arguing that because the State had put into evidence the theory that Kessler was someone who drank alcohol and became so intoxicated that he lost control of his bladder, the instruc-

tion was appropriate. The trial judge denied Kessler's request, finding that there had been no evidence quantifying the level of Kessler's alleged intoxication and no admission that Kessler committed the acts but was too intoxicated to appreciate what he was doing. Kessler admitted that the defense put forth no evidence to suggest that Kessler was intoxicated at the time of the alleged acts.

In determining whether the trial court erred in failing to instruct on voluntary intoxication, this court must review the evidence in the light most favorable to Kessler. See *State v. Hayes*, 270 Kan. 535, 541, 17 P.3d 317 (2001); *State v. Sims*, 265 Kan. 166, 168, 960 P.2d 1271 (1998).

A defendant is entitled to instructions on the law applicable to his or her theory of defense if there is evidence to support the theory. Furthermore, there must be evidence which, viewed in the light most favorable to the defendant, would justify a jury finding in accordance with the defendant's theory. *State v. Flournoy*, 272 Kan. 784, 806, 36 P.3d 273 (2001); *State v. Gonzales*, 253 Kan. 22, 23, 853 P.2d 644 (1993). The defendant has the burden of showing that he or she was so intoxicated that he or she was robbed of his or her mental faculties. *State v. Shaw*, 260 Kan. 396, 408-09, 921 P.2d 779 (1996); *State v. Minski*, 252 Kan. 806, Syl. ¶ 3, 850 P.2d 809 (1993). Whether a defendant was intoxicated to such an extent is a question of fact. *State v. Shehan*, 242 Kan. 127, 131, 744 P.2d 824 (1987).

Because of the required element of "intent to arouse or to satisfy" sexual desires, the crime of aggravated indecent liberties in violation of K.S.A. 21-3504(a)(3)(A), for which Kessler was convicted, is a specific intent crime. See *State v. Belcher*, 269 Kan. 2, 7, 4 P.3d 1137 (2000). K.S.A. 21-3208(2) states:

"An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind."

Thus, voluntary intoxication was available to Kessler as a defense.

The record does not reflect that Kessler prepared a requested instruction on intoxication. Rather, the request for the instruction

arose as a result of the trial court having initially prepared proposed instructions in anticipation of the evidence.

The evidence of Kessler's impaired mental faculties is significantly less than the evidence before the court in other cases in which voluntary intoxication was an issue. See, *e.g.*, *State v. Gadelkarim*, 247 Kan. 505, 802 P.2d 507 (1990). Kessler did not testify, nor did he put forth any evidence that his mental faculties were impaired on the nights the molestations were alleged to have occurred. We, therefore, conclude that there is no evidence that would support a finding that Kessler's mental faculties were impaired on the nights in question. See *Shaw*, 260 Kan. at 410 (holding that the trial court did not err in failing to instruct on voluntary intoxication). Absent evidence to support a defense of voluntary intoxication, the trial court did not err in refusing to give the requested instruction. See *Shehan*, 242 Kan. at 131-32.

## DISCOVERY

Kessler contends that the trial court's failure to mandate the discovery of letters written to K.L. by her sister, which were in the State's possession, denied him his constitutional right to fully cross-examine K.L. The State maintains that the trial court properly exercised its discretion in refusing to mandate disclosure of the letters, after reviewing the letters and finding that they were not relevant to the case.

K.S.A. 2002 Supp. 22-3212(b) provides in part:

"Upon request, the prosecuting attorney shall permit the defendant to inspect and copy or photograph books, papers, documents, tangible objects, buildings or places, or copies, or portions thereof, which are or have been within the possession, custody or control of the prosecution, and which are *material* to the case and will not place an unreasonable burden upon the prosecution." (Emphasis added.)

Only one paragraph of the letters even approached relevancy to the present case. It stated:

"I suppose since you don't have Mom and me to babysit anymore that you will take [C.L.K.] over to his Child Molesting Father's huh? Ask [C.L.K.] about that. And you better believe him!! Go ahead ask [C.L.K.] what Greg has done to him! [C.L.K.] told me that Greg has been touching his wiener and nuts. He also said that once Greg was drunk and when he was on top of him he peed on [C.L.K.].

YALE LAW LIBRARY

I suppose you won't do anything about that either! As long as you have a free babysitter so you can go get drunk!"

The trial court has broad discretion pursuant to K.S.A. 2002 Supp. 22-3212 to require the disclosure of documents and other tangible objects that are in the possession of or under the control of the prosecution. *State v. Davis*, 266 Kan. 638, 642, 972 P.2d 1099 (1999).

Discovery in criminal cases favors disclosure as fully and completely as is reasonably possible under the circumstances. *State v. Brinkley*, 256 Kan. 808, 819, 888 P.2d 819 (1995). The defendant has the burden of showing the materiality and reasonableness of his or her request. *State v. Dykes*, 252 Kan. 556, 559, 847 P.2d 1214 (1993). One who asserts that the trial court has abused its discretion bears the burden of showing such abuse. *Dykes*, 252 Kan. at 559. Judicial discretion is abused only when no reasonable person would take the view adopted by the trial court. *State v. Villanueva*, 274 Kan. 20, Syl. ¶ 1, 49 P.3d 481 (2002).

The Confrontation Clause of the Sixth Amendment to the United States Constitution was made applicable to the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403, 13 L. Ed. 2d 923, 85 S. Ct. 1065 (1965); *State v. Butler*, 257 Kan. 1110, 1114, 916 P.2d 1 (1996). This same right is guaranteed by § 10 of the Kansas Constitution Bill of Rights. *State v. Vargas*, 260 Kan. 791, 797, 926 P.2d 223 (1996). The right of effective cross-examination is part of the constitutional right to confront witnesses. *State v. Wilkins*, 220 Kan. 735, Syl. ¶ 1, 556 P.2d 424 (1976).

Prior to opening statements, defense counsel made a record of a conversation in the judge's chambers in which he advised the court that the State had failed to disclose letters written to K.L. by her sister in January 2000. In the letters, K.L.'s sister allegedly urged K.L to contact the police regarding sexual abuse against C.L.K. by Kessler. Admitting that he was unsure of their relevance, Kessler objected to the State's failure to disclose the letters to allow him to determine whether they were relevant. After reviewing the letters, the trial court found them to be irrelevant, stating that they

were personal letters between two sisters having nothing to do with the case.

During trial, K.L. testified on direct examination that she first became aware of the molestation when she received a letter from her sister in December 1999 or January 2000. The letter stated that K.L. should ask C.L.K. about what Kessler had done to him. On cross-examination, Kessler attempted to impeach K.L's testimony by questioning K.L. about her previous testimony that she discovered the abuse in October 1999. K.L. explained the discrepancy by claiming that she had gotten "the months mixed up."

In his motion for new trial, Kessler asserted that the trial court erred in denying his request for discovery of the January 2000 letter written to K.L. by her sister. The motion stated in part:

"Defense counsel was unaware at the time of this discovery request prior to trial that [K.L.] intended to testify that the first time she became aware of the allegations from [C.L.K.] was not in October of 1999, but rather January of 2000. Therefore, the contents of this letter may well have proved to be quite relevant as impeachment evidence had the same been disclosed. Defense counsel, however, had very little information about the contents of such a letter and certainly could not use the same for cross-examination or impeachment without viewing its contents and the context under which it had been written."

Defense counsel pointed out that he did not have the opportunity to use and had still not had the opportunity to view the letter to determine what else, in addition to the date, might have been useful in impeaching K.L. The motion for a new trial was denied.

The State asserts that the content of the letters is innocuous. The State further claims that after reviewing the letters, defense counsel fails to allege how Kessler was prejudiced, what exculpatory material the letters contained, and how the letters may have been instrumental in advancing his defense.

Kessler argues that the denial of the discovery of the letters violated his right to effectively cross-examine K.L. at trial. However, the only relevant evidence contained in the letters that would have been useful on cross-examination of K.L. was the fact that the letter was dated January 2000, and K.L. had previously alleged knowledge of the molestation in October 1999. Defense counsel pointed out this discrepancy in his cross-examination. Thus, the

trial court did not abuse its discretion in refusing to allow Kessler discovery of the letters.

We also conclude that Kessler failed to meet the burden of showing the materiality and reasonableness of his request. See *Dykes*, 252 Kan. at 559. This is especially true considering the fact that the letters are included in the record on appeal and were available for Kessler's review in writing this appeal. Nevertheless, Kessler has failed to demonstrate how the contents of the letters could have assisted in his defense.

## SUFFICIENCY OF THE EVIDENCE

Kessler contends that there was insufficient credible evidence to support his convictions. Kessler supports this claim by detailing in his brief the facts and circumstances that led to the report of the alleged molestation and the discrepancies between C.L.K.'s statements during the interview, at the preliminary examination, and at trial.

First, it must be noted that Kessler erroneously contends that a sufficiency of the evidence claim presents a question of law over which this court exercises de novo review. When sufficiency of the evidence is challenged on a criminal appeal, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Brown*, 272 Kan. 809, Syl. ¶ 1, 37 P.3d 31 (2001).

Furthermore, credibility is an issue for determination by the jury. "On appellate review, the credibility of witnesses will not be passed upon, conflicting evidence will not be weighed, and all questions of credibility are to be resolved in favor of the State." *State v. Clemons*, 261 Kan. 66, Syl. ¶ 4, 929 P.2d 749 (1996).

C.L.K. testified at trial to two separate touchings occurring on two separate nights. C.L.K. indicated at trial that Kessler touched his penis by closing his fist and moving it back and forth and indicated that Kessler touched his buttocks by waving his hand back and forth. The testimony of C.L.K. at trial was sufficiently similar to his testimony at the preliminary examination and his statements

during the taped interview. Thus, C.L.K.'s testimony was sufficient to satisfy the first element of both counts of aggravated indecent liberties. C.L.K. testified, and it was not controverted, that he was 8 years old at the time of these alleged touchings, thus satisfying the second element of both counts. Through the testimony of K.L. and C.L.K., there was evidence that the alleged touchings occurred between January 1, 1999, and July 31, 1999. Thus, there was also evidence that would satisfy the third element of both counts.

After reviewing all the evidence in the light most favorable to the prosecution, we conclude there was sufficient evidence for a reasonable factfinder to have found Kessler guilty on both charges beyond a reasonable doubt.

## UPWARD DURATIONAL DEPARTURE SENTENCE

Kessler contends the trial court erred in imposing an upward durational departure sentence for count one because the district court did not have the statutory authority to impose an upward durational departure sentence after this court's decision in *State v. Gould*, 271 Kan. 394, 23 P.3d 801 (2001).

A court's authority to impose sentence is provided for by statute. See K.S.A. 21-4601 *et seq.* Thus, this question involves interpretation of statutes and is a question of law over which this court exercises unlimited review. *State v. Golston*, 269 Kan. 345, 347, 7 P.3d 1132 (2000).

The procedure in this case was unique because it was developed exclusively by the district court. Over Kessler's objection to the procedure and on the same day the guilty verdict was rendered, the jury that convicted Kessler was asked to consider for the first time whether the offenses in both counts involved a fiduciary relationship between Kessler and C.L.K. The complaint/information contained a special allegation in count one that a fiduciary relationship existed between Kessler and C.L.K. The jury was instructed that it could consider evidence that had been introduced at trial and any additional evidence presented by the parties. The State presented a journal entry of judgment stating that Kessler was the natural and legal father of C.L.K. Kessler put forth two witnesses that testified that the relationship between Kessler and

C.L.K. was strained and that C.L.K. never placed any special trust or confidence in Kessler. The trial court instructed the jury that the findings of the jury on these questions must be unanimous and that the State had the burden of proof beyond a reasonable doubt. The trial court also defined, through an instruction, what constituted a fiduciary relationship. The jury found that a fiduciary relationship was involved when both counts of aggravated indecent liberties occurred.

This is an issue of first impression. In *Gould*, 271 Kan. 394, Syl. ¶ 3, this court responded to the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), and held that the Kansas scheme for imposing upward durational departure sentences embodied in K.S.A. 2000 Supp. 21-4716 was unconstitutional on its face. This court specifically limited the holding in *Gould* to upward durational departure sentences in *State v. Carr*, 274 Kan. 442, Syl. ¶ 5, 53 P.3d 843 (2002).

In *State v. Cody*, 272 Kan. 564, 35 P.3d 800 (2001), the effects of the decision in *Gould* were further addressed when this court was faced with determining whether a defendant's guilty plea constituted an admission that the sentencing factors used to increase his sentence were proven beyond a reasonable doubt. The *Cody* court declined to adopt this argument, noting that K.S.A. 2000 Supp. 21-4716(a) contains the legislature's grant of authority to depart from a presumptive sentence and that this provision had been declared unconstitutional in *Gould*. 272 Kan. at 565-66.

This same result was also reached in *State v. Kneil*, 272 Kan. 567, 35 P.3d 797 (2001), handed down that same day. In *Kneil*, the defendant had also pled guilty. The trial court in that case had imposed an underlying upward durational departure sentence upon its own motion. The defendant's probation was later revoked, leading her to appeal the revocation and her underlying sentence. The State argued that in pleading guilty, the defendant had waived her right to have the jury determine whether the aggravating factors supporting the departure were proven beyond a reasonable doubt. The *Kneil* court failed to reach the State's argument, re-

jecting, as it had in *Gould*, the State's invitation to work around the flawed sentencing scheme. 272 Kan. at 571.

At the time of trial in this case, the court had handed down its decision in *Gould*, but the legislature had not yet responded with another means of imposing upward durational departures. A new procedure for imposing upward durational departures was not enacted into law until June 6, 2002, over 1 year after the trial in this case. L. 2002, ch. 170. Thus, this court is not evaluating the constitutionality of the legislature's response to *Gould* but, rather, the propriety of the procedure employed by the trial court in imposing an upward durational departure when the procedure in place at the time was unconstitutional.

The State argues that *Gould* did not render the statute vesting the trial court with the authority to impose upward durational departures unconstitutional, but rather only the scheme employed by the courts in doing so. The State points out that the procedure employed by the trial court was in accordance with the requirements articulated in *Apprendi* and consistent with the Kansas Legislature's response to *Gould*.

In accordance with this court's decision in *Gould*, *Cody*, and *Kneil*, we deny the State's invitation to work around a flawed sentencing scheme. A district court's authority to impose sentence is controlled by statute. Thus, where the statutory procedure for imposing upward durational departure sentences has been found unconstitutional, the district court has no authority to impose such a sentence. This case is remanded to the district court for resentencing on count one in accordance with this opinion.

Convictions affirmed, sentence on count one vacated, and case remanded for resentencing on count one.

ABBOTT, J., not participating.

DAVID S. KNUDSON, J., assigned.