(59 P.3d 1039)
No. 87,297

STATE OF KANSAS, *Appellee,* v. RANDALL RAY SPRINKLE, *Appellant.*

Opinion filed December 27, 2002.

*Nathan B. Webb*, assistant appellate defender, and *Randall Hodgkinson*, deputy appellate defender, for appellant.

*Keith E. Schroeder*, county attorney, and *Thomas R. Stanton*, deputy county attorney, for appellee.

Before BEIER, P.J., PIERRON, J. and PADDOCK, S.J.

BEIER, J.: Randall Ray Sprinkle was convicted of 14 counts of nonresidential burglary. He appeals the imposition of his dispositional departure sentence, arguing that his employment as a police officer did not place him in a fiduciary relationship with his victims.

Sprinkle was apprehended approximately 1 year after leaving the Hutchinson Police Department (HPD), where he had attained the rank of sergeant. He committed three of the burglaries to which he ultimately pleaded no contest before he left the police force.

Sprinkle's criminal history was I, making the range for each offense 11 months to 13 months. His presumptive sentence was probation, but the State moved for an upward dispositional departure. It argued that Sprinkle's employment made him a fiduciary of the public and constituted a substantial and compelling reason to send him to prison. K.S.A. 2001 Supp. 21-4716(b)(2) provides a nonexclusive list of aggravating factors that may be considered in arriving at an upward dispositional departure. They include: "The offense involved a fiduciary relationship which existed between the defendant and the victim." K.S.A. 2001 Supp. 21-4716(b)(2)(D).

James Rayburn of the HPD testified Sprinkle was a commissioned officer. Such officers must take an oath to protect and serve the public and uphold the laws. Two men from the community, each of whom owned a business burglarized twice by Sprinkle, spoke about the impact of the burglaries on their lives. Neither said he knew Sprinkle personally or had given him information about the business or its security system or procedures because of Sprinkle's status as a police officer. Nevertheless, the State argued Sprinkle gained specialized knowledge about committing burglaries through his position with the police force. Sprinkle, for his part, argued that the creation of a fiduciary relationship requires two persons, rather than one person and the public in general.

On the way to his ruling, the district judge noted that Sprinkle's employment clothed him with additional authority and respect and that penalties for crimes are enhanced if they are committed

*against* police officers. He also said he could not separate the felonious conduct in which Sprinkle engaged from the knowledge of criminal methods Sprinkle must have gained through 25 years of experience on the police force. These factors led the district judge to conclude that a police officer does have a fiduciary relationship with the members of the community he or she has sworn to protect. The judge therefore sentenced Sprinkle to 12 months' imprisonment on each count. The first three counts, covering burglaries committed when Sprinkle was still employed by HPD, were concurrent with each other. The remaining 11 counts were concurrent with each other and consecutive to the first three counts.

On appeal, Sprinkle continues to challenge the equation of his status as a police officer or former police officer with a fiduciary relationship to members of the public, his victims.

" 'Whether the trial court's findings constitute substantial and compelling reasons for departure is a question of law. The question in this analysis is twofold. First, is a particular reason given by the sentencing court a valid departure factor? Second, are the reasons, as a whole, substantial and compelling reasons for departure in a given case? Reasons which may in one case justify departure may not in all cases justify a departure. Rather, the inquiry must evaluate the crime and the departure factors as a whole to determine whether departure in a particular case is justified. It is a question of what weight to give each reason stated and what weight to give the reasons as a whole in light of the offense of conviction and the defendant's criminal history. The inquiry also considers the purposes and principles of the KSGA.' [Citation omitted]." *State v. Tiffany*, 267 Kan. 495, 504-05, 986 P.2d 1064 (1999).

The only Kansas case that has applied the fiduciary relationship aggravating factor is *State v. Ippert*, 268 Kan. 254, 995 P.2d 858 (2000). In *Ippert*, the defendant was convicted on several counts of rape and aggravated indecent liberties, crimes perpetrated against his young son and daughter over a period of several years. Evidence demonstrated the defendant also had told the children he would commit suicide if they revealed the abuse.

The Supreme Court held these facts supported application of this particular aggravating factor. The defendant had violated his children's trust and used his unique position to commit the crimes and keep them secret. 268 Kan. at 262-63. Like the statute itself,

the *Ippert* opinion did not explicitly define the phrase "fiduciary relationship" in the upward departure setting.

In *Denison State Bank v. Madeira*, 230 Kan. 684, 640 P.2d 1235 (1982), a civil case involving a bank and its debtors, two types of fiduciary relationships were identified: (1) those specifically created by contract, "and (2) those implied in law due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions." 230 Kan. at 691. Although one might argue that Sprinkle, a police officer paid with tax dollars, had a contract with the public, we are confident that interpreting the statute to cover any situation in which any government employee who commits any crime that injures any member of the public in any way gives it a breadth unintended by the legislature. Thus, if a fiduciary relationship existed between Sprinkle and his victims in this case, it, like the fiduciary relationship in *Ippert*, must have had its genesis in the peculiar facts of the burglaries and the parties' relationships to one another and to the burglaries. In the language of *Denison State Bank*, the relationship would have to be "implied in law."

The *Denison State Bank* decision referenced several general principles to be considered in determining whether a particular factual situation gives rise to such a fiduciary relationship:

"A fiduciary relationship imparts a position of *peculiar confidence placed by one individual in another*. A fiduciary is a person with a duty to *act primarily for the benefit of another*. A fiduciary is in a position to have and exercise, and does *have and exercise influence over another*. A fiduciary relationship implies a condition of *superiority of one of the parties over the other*. Generally, in a fiduciary relationship, the property, interest or authority of the other is *placed in the charge of the fiduciary*." 230 Kan. at 692.

Our Supreme Court also has discussed a more general abuse of a trust relationship as an aggravating sentencing factor when a defendant was not involved in law enforcement. In *State v. Gideon*, 257 Kan. 591, 894 P.2d 850 (1995), the defendant and the victim worked at a restaurant in Pittsburg. The victim accepted a ride home from a social gathering with the defendant, and he kidnapped, raped, sodomized, and murdered her. Upon conviction, he received an upward durational departure sentence on three of

the charges. 257 Kan. at 594-95. One of the reasons cited for departure was the advantage he had taken of his victim's trust. 257 Kan. at 623.

The Supreme Court looked to three cases from two other jurisdictions for guidance. It found *State v. Hamilton*, 348 N.W.2d 112 (Minn. App. 1984), distinguishable because the defendant in that case was the rape victim's stepfather. This meant he had a much closer relationship with his victim than Gideon had with his. In both *State v. Campas*, 59 Wash. App. 561, 799 P.2d 744 (1990), and *State v. Strauss*, 54 Wash. App. 408, 773 P.2d 898 (1989), the Washington appellate court concluded the available evidence was insufficient to find an abuse of trust, although "mere acquaintances" might form a trust relationship. *Gideon*, 257 Kan. at 627.

The Supreme Court ultimately concluded in *Gideon* that an abuse of trust was not supported by the evidence. The defendant and victim had no substantial ongoing relationship. 257 Kan. at 627. "A departure factor of 'trust' is not equivalent to the statutory factor of 'fiduciary relationship.' The relationship between the defendant and the victim, although not a designated statutory factor, is relevant in determining whether a departure sentence is warranted." 257 Kan. at 627. To warrant an upward departure sentence, the degree of trust "must be a higher degree of trust than is present here. We think of trust as involving the relationship between a child and a parent, stepparent, or, for example, a church or boy scout leader." 257 Kan. at 627.

We also may look to other jurisdictions that have dealt with whether a police officer's violation of the public trust or a more general abuse of trust justifies an enhanced sentence.

In *State v. Elliget*, 177 Ariz. 32, 864 P.2d 1064 (Ct. App. 1993), *rev. denied* (January 11, 1994), the defendant police officer was convicted of two sexual offenses with a minor. His plea agreement stipulated to lifetime probation for one charge and a prison term for the other charge. The trial court sentenced him to 14 years' imprisonment, the upper limit of the permissible range, relying upon a statutory provision allowing an enhanced sentence if " 'the defendant was a public servant and the offense involved conduct

*directly related* to his office or employment.' " (Emphasis added.) 177 Ariz. at 35 (quoting Ariz. Rev. Stat. Ann. § 13-702[D][8]).

The appellate court viewed the trial court's reliance on the aggravating factor in Ariz. Rev. Stat. Ann. § 13-702(D)(8) as error because it made no factual finding that defendant's conduct was directly related to his employment as a police officer. 177 Ariz. at 35. However, the trial court had also relied upon a catch-all clause that allowed it to consider any other factor that it deemed appropriate to "the ends of justice." 177 Ariz. at 35 (citing Ariz. Rev. Stat. Ann. § 13-702[D][13] [Supp. 1992]). Under that factor, the trial court "found that defendant had taken an oath as a police officer to uphold the law, and violated that oath, and that such misconduct undermined public confidence in law enforcement, justifying an aggravated sentence to deter similar conduct." 177 Ariz. at 36. The trial court could properly consider as aggravating, under Ariz. Rev. Stat. Ann. § 13-702(D)(13), the special injurious consequences to the community resulting from a crime committed by a police officer. 177 Ariz. at 36.

A similar result was reached in Indiana in *Marshall v. State*, 643 N.E.2d 957 (Ind. App. 1994), *transfer denied* January 1, 1995. In that case, the defendant was a deputy marshal who lived in the same mobile home park as the 14-year-old victim of his sexual assault. The victim had babysat for defendant's children, liked him, and thought she could trust him. After telling him that she had used marijuana and alcohol, the victim, the victim's mother, and the defendant agreed to have defendant counsel the victim about drugs and alcohol. The assault occurred during a counseling session at the defendant's home. 643 N.E.2d at 958-59.

The defendant later challenged his prison sentence, arguing there were no aggravating factors that would have precluded a suspended sentence and probation. The appellate court noted the defendant's status as a law enforcement officer, his position of trust with the victim and members of the community, and his breach of that trust. Such a breach was a valid aggravating factor allowing the trial court to impose the prison sentence. 643 N.E.2d at 963.

In the Louisiana case of *State v. Weil*, 507 So. 2d 16 (La. App. 1987), the defendant was a police officer convicted of possessing

stolen property. He challenged his sentenced to 1 year in prison with hard labor, although the maximum sentence was 10 years with hard labor. 507 So. 2d at 16-17. The trial court found that, although his crime did not involve use of his law enforcement status, he had abused the public trust. The appellate court upheld the sentence as well within the lower range of sentencing alternatives and supported by the trial court's findings. 507 So. 2d at 17.

In *State v. Harding*, 62 Wash. App. 245, 813 P.2d 1259, *rev. denied* 118 Wash. 2d 1003 (1991), the Washington appellate court rejected the idea that there must be a direct relationship between the perpetrator and the victim in order to enhance a sentence because of a more general abuse of trust. In that rape case, the defendant was a son of an apartment manager and had a master key for the purpose of occasional cleaning. He did not know the tenant victim or have any direct personal relationship with her. The trial court concluded the defendant had used the master key to enter the tenant's apartment, and the court handed down an enhanced sentence as a result.

The appellate court upheld the result and endorsed the trial court's supporting rationale of abuse of trust. No direct personal relationship was necessary. "In our modern world, people routinely put their trust in organizations (such as the management of an apartment complex) without knowing the individuals who will carry out the tasks entrusted to the organization." 62 Wash. App. at 249.

Here, the trial judge stated that Sprinkle's knowledge and "inside information" assisted him in committing the burglaries. This finding tracked the State's argument that Sprinkle, as a police officer for approximately 25 years, had to possess more knowledge than the average person about how to commit a successful crime. The trial judge also relied upon his view that a fiduciary relationship existed because law enforcement officers are granted more authority than members of the public.

The trial judge's upward dispositional departure went beyond what the statute authorizes and what the Supreme Court would condone. Neither general knowledge regarding criminal behavior gained through experience as a law enforcement officer nor the degree of authority granted to such officers as a matter of course

establishes a violation of an implied fiduciary relationship under *Ippert* or a more general abuse of trust under *Gideon.*

In *Ippert,* the defendant's status as the victimized children's father gave rise to a duty of support as well as protection. The children were dependent upon him in every way — emotionally, physically, and financially. Although trust and a duty of protection also existed between Sprinkle and the individual members of the public who eventually became his victims, those persons were not dependent upon him in nearly as many ways or to nearly the same degrees that Ippert's children were dependent upon him. There was no "peculiar confidence placed by one individual in another." *Denison State Bank,* 230 Kan. at 692. We cannot find a fiduciary relationship implied in law between Sprinkle and his victims "due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions." *Denison State Bank,* 230 Kan. at 691. There is no proof Sprinkle capitalized on his official relationship with the victims to maximize the success of his criminal pursuits.

This also was not a situation in which a more general abuse of trust was demonstrated under *Gideon.* That decision indicates our Supreme Court would apply a more demanding test than that applied in at least Arizona, Louisiana, and Washington. We hold that it is not sufficient for the State to prove only that a defendant was a police officer or that he or she occupied a position of merely theoretical trust. The defendant must have had a direct, personal relationship of some duration with the victim, one that would have led the victim to place the trust eventually betrayed.

In this case, there is no evidence that Sprinkle had such a relationship with any of the victims in this case. There is no evidence that he used his position as a police officer to acquire specific, individualized information about any particular victim or the security of that victim's business. There is nothing beyond the speculative argument of the State to support an upward dispositional departure for an abuse of trust. That is insufficient.

Finally, Sprinkle also argues on appeal that the district judge's imposition of an upward dispositional departure sentence violated his constitutional rights under *Apprendi v. New Jersey,* 530 U.S.

466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), and *State v. Gould*, 271 Kan. 394, 23 P.3d 801 (2001). Because this case must be remanded for resentencing, we briefly address this issue.

Our Supreme Court rejected Sprinkle's argument in *State v. Carr*, 274 Kan. 442, 53 P.3d 843 (2002). We are in no position to dispute its holding.

Reversed and remanded for resentencing.