(196 P.3d 379)
No. 97,872

STATE OF KANSAS, *Appellee*, v. JERRY ALLEN HORN, *Appellant*.

Opinion filed November 7, 2008.

*Jessica J. Travis*, of Keck & Travis, LLC, of Olathe, for appellant.

*Steven J. Obermeier*, assistant district attorney, *Phill Kline*, district attorney, and *Paul J. Morrison*, attorney general, for appellee.

Before MALONE, P.J., BUSER, J., and LARSON, S.J.

LARSON, J.: This is the appeal of Jerry Allen Horn from the upward departure sentence entered after he pled guilty to seven sex crimes with a 10-year-old boy.

Horn's arguments revolve around the procedure involved in impaneling a jury to consider whether a fiduciary relationship existed between Horn and the victim as an aggravating factor to justify an upward durational departure sentence.

The record reflects that Horn was charged with three counts of aggravated criminal sodomy with a child under the age of 14 years, a severity level 1 person felony in violation of K.S.A. 21-3506; three counts of aggravated indecent liberties with a child under the age of 14 years, a severity level 3 person felony in violation of K.S.A. 21-3504; and one count of sexual exploitation of a child, a severity level 5 person felony in violation of K.S.A. 21-3516. At his arraignment, Horn pled not guilty.

Horn moved to suppress the confession that he had given to a detective of the Lenexa Police Department, contending it was the result of mentally coercive tactics. Prior to trial, the State filed a notice of its intent to ask for an upward durational departure sentence based on the aggravating factor that the offenses involved a fiduciary relationship between Horn and the victim.

On the morning of trial, with a jury waiting to be called, Horn changed his plea from not guilty to guilty. There was no plea agreement. In great detail and at great length, the district court questioned Horn as to his wishes and concluded Horn was knowingly and voluntarily entering a plea of guilty to all seven charges.

The record reflects Horn understood that if a departure was granted, the sentence could be 492 months in prison. Horn was 68 years old and had an undergraduate degree in electrical engineering. He understood that by his guilty plea he was admitting that he committed the acts set forth in the amended complaint. The State provided a factual basis for the pleas. Horn agreed with the factual basis. Horn had no questions prior to the court's acceptance of his guilty pleas.

The district court then considered the State's motion for an upward durational departure sentence based on the existence of a

fiduciary relationship between Horn and the victim, 10-year-old C.T.P. Both counsel discussed with the court the necessity of having the claimed upward departure factor determined by a jury but also agreed that Horn could waive a jury trial. Defense counsel stated they were prepared for a departure hearing before a jury.

The prosecution and defense argued about whether the evidence of the sexual activity between Horn and C.T.P. could come into the hearing or whether it was so prejudicial that the evidentiary value was outweighed. The district court considered the discussion an additional motion in limine to exclude the evidence and then denied the motion. The court decided the jury was entitled to know that the defendant had pled guilty to certain crimes, stating one could not divide out that part of the relationship between Horn and C.T.P.

A jury was selected, and the court gave preliminary instructions which set forth the elements of the crimes pled to, a definition of "fiduciary relationship," and the normal and usual instructions given requiring proof beyond a reasonable doubt and a unanimous verdict.

Witnesses testifying before the jury consisted of a teacher who had received a note from C.T.P. complaining of bad touches, C.T.P.'s mother, C.T.P., an interview specialist who had interviewed C.T.P. and authenticated the tape of that interview, which was played before the jury, C.T.P.'s father, and a detective who had interviewed C.T.P. and his mother and had taken pictures of the inside of Horn's apartment which were admitted into evidence.

C.T.P.'s mother testified to the outstanding relationship the family had with Horn, who had become more than a friend but like a family member. He was at their home on weekends and took the boys (C.T.P. and his twin brother) to music lessons, home from church, go-carting, waterskiing, to the lake, to camp outs, and to his home for overnights. Horn took the boys flying in a small plane, and on Saturdays went out for lunch and played games like laser tag and paintball. Horn became a part of the family and at one point, said he had spent about $3,000 entertaining the boys. C.T.P. always had extra money, which he said came from Horn.

C.T.P. testified as to his involvement with Horn, and this testimony was much like his mother's. He did not testify as to any of the sex crimes forming the basis for the complaint and plea of guilty.

The interview specialist testified her interview with C.T.P. was recorded, and the State sought to admit it into evidence. The defense renewed its pre-evidence objection to any evidence of the sexual activity, argued the evidence was cumulative, and did not address the fiduciary relationship. The court overruled the objections, finding that the "sexual conduct is clearly relevant to this proceeding." The video was admitted and viewed by the jury.

C.T.P.'s father testified to essentially the same information as his wife concerning the family's relationship with Horn. He said he had expected Horn to exercise a normal duty of care to protect others but admitted there was no formal or written agreement regarding medical treatment or care of the boys.

The police officer testified he interviewed C.T.P. and was present at the investigator's interview. He authenticated photographs of Horn's apartment, including rockets, guns, a ferret, and photographs of the boys. The officer also interviewed Horn, and over defense objections a video of that interview was admitted into evidence and shown to the jury.

After the State rested, the defense moved for acquittal, or more accurately, presented a motion contending the State had failed to establish a prima facie case showing a fiduciary relationship. The motion was denied.

Horn did not present any evidence or testimony, although he was in no manner prevented from doing so.

The parties had a jury instruction conference, and Horn objected to an instruction defining fiduciary relationship to which the district court added a sentence. This will be discussed in more detail as an issue in this appeal.

The jury was instructed, counsel for both parties argued, and the matter was submitted to the jury. The jury returned a verdict finding that a fiduciary relationship was established on each count of aggravated sodomy and aggravated indecent liberties.

At sentencing, the court heard testimony from Horn's pastor, Horn's two daughters, and the victim's parents. The court imposed a sentence of 234 months, double the standard (mid-box) sentence, on each of the three counts of aggravated sodomy, and 59 months, again double the standard sentence, on each of the three counts of aggravated indecent liberties. The sentences were imposed consecutive to each other and totaled 1,088 months, but pursuant to K.S.A. 21-4720, Horn received the maximum sentence under the law of 468 months (double the base sentence).

The court discussed all the evidence before it as justifying the sentence but did not make a specific statement that the departure factor was substantial and compelling.

Horn has filed a timely appeal raising a multitude of issues which we will consider as raised.

Horn first argues it was error to impanel a jury to consider the existence of an upward departure factor because there is no statutory authority for such action when a defendant enters a plea.

Horn additionally contends that in the absence of specific statutory authority, impaneling the jury violated the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and §§ 5 and 10 of the Kansas Constitution Bill of Rights.

Horn did not raise any constitutional issues before the district court. Constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Alger*, 282 Kan. 297, 304, 145 P.3d 12 (2006). Horn recognizes that he did not raise this issue below but argues consideration of the issue is properly based on the exception that consideration of the theory is necessary to serve the ends of justice and to prevent denial of fundamental rights. See *State v. Shopteese*, 283 Kan. 331, 339, 153 P.3d 1208 (2007). This is the case with several other constitutional issues first raised on appeal, which we will reach to protect Horn's fundamental rights.

The history of the right to have juries consider any fact that increases a criminal penalty beyond the statutory maximum is well known. It originated in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), and was followed in Kansas by *State v. Gould*, 271 Kan. 394, 413, 23 P.3d 801 (2001),

where K.S.A. 2000 Supp. 21-4716 was struck down for allowing upward departure criminal sentences based only on a judge finding one or more aggravating factors by a preponderance of the evidence. This was followed in 2002 by amendment of K.S.A. 21-4716 and K.S.A. 21-4718 (L. 2002, ch. 170, secs. 1 and 2) by the Kansas Legislature to provide direction and procedure for jury trials convened to consider upward departure requests which must be proven beyond a reasonable doubt.

Horn first contends that the reference to a jury in the departure hearing statutes is to the "trial jury," which he translates into an argument that only the "trial jury" can hear an upward departure question and its corollary conclusion that a defendant is not subject to an upward departure when a defendant enters a guilty plea because the statute does not cover such a situation. We do not agree.

This issue and many of the issues in this appeal require us to interpret a statute, which is a question of law over which we have unlimited review. See *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006). In reviewing the language added by the legislature in order to comply with *Apprendi* and *Gould*, we apply various rules of statutory construction which are hereinafter stated.

An appellate court's first task is to "ascertain the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning." *State v. Stallings*, 284 Kan. 741, 742, 163 P.3d 1232 (2007). When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act in *pari materia*, with a view of bringing the provisions into workable harmony if possible. *State v. Breedlove*, 285 Kan. 1006, 1015, 179 P.3d 1115 (2008). As a general rule, courts presume that the legislature does not intend to enact useless or meaningless legislation. *Hawley v. Kansas Dept. of Agriculture*, 281 Kan. 603, 631, 132 P.3d 870 (2006).

The direction to provide the guarantees required by *Apprendi* are found in K.S.A. 21-4716(b), which states: "Subject to the provisions of subsection (b) of K.S.A. 21-4718, and amendments thereto, any fact that would increase the penalty for a crime beyond the statutory maximum, other than a prior conviction, shall be submitted to a jury and proved beyond a reasonable doubt."

The procedure to be followed is set forth in K.S.A. 21-4718(b)(2)-(7) which was added to the existing statute by the 2002 Kansas Legislature.

K.S.A. 21-4718(b)(2) states that in considering the imposition of an upward departure sentence:

"The court shall determine if the presentation of any evidence regarding the alleged fact or factors that may increase the penalty for a crime beyond the statutory maximum, other than a prior conviction, shall be presented to a jury and proved beyond a reasonable doubt during the trial of the matter or *following the determination of the defendant's innocence or guilt.*" (Emphasis added.)

We do not see how the italicized wording can apply only where guilt is determined by a trial. It is equally applicable where guilt is determined based on a plea.

K.S.A. 21-4718(b)(4) specifically provides that the jury in an upward departure sentence proceeding may be waived. If it is, the upward departure sentence proceeding is to be conducted by the court.

The court has the right, in the interest of justice, to determine that a separate departure sentence proceeding is to be held. K.S.A. 21-4718(b)(4). The evidence to be considered must be relevant, and only evidence known to the defendant prior to the upward departure sentence proceeding is admissible. K.S.A. 21-4718(b)(5). K.S.A. 21-4718(b)(6) requires the court to provide the jury with oral and written instructions to guide its deliberations. The requirement for a unanimous vote finding existence of a factor beyond a reasonable doubt is set forth in K.S.A. 21-4718(b)(7).

We do not find Horn's argument that the holding in *State v. Kessler*, 276 Kan. 202, 73 P.3d 761 (2003), requires us to find the district court erred in impaneling a jury to be persuasive. *Kessler* was a case tried in district court between the date *Gould* was decided and prior to the legislature enacting the amendments which we have previously referred to in this opinion. The *Kessler* court held that although the district court had held a separate hearing to obtain a jury determination of the aggravating factors beyond a reasonable doubt, there was no existing statutory authority for an upward durational departure sentence which required the sen-

tence to be vacated because the court had no authority to enter such a sentence. 276 Kan. at 217.

In our case, there is valid legislative authority for the district court's actions, which did not exist in *Kessler*. *Kessler* does not require the district court's actions to be reversed.

When we read all of the provisions added by the 2002 Kansas Legislature which are now found in K.S.A. 21-4716 and K.S.A. 21-4718, it is apparent that the reference to "trial jury" in K.S.A. 21-4718 was not intended to limit the ability of the State to ask for upward durational departures only to situations where not guilty pleas were entered and a jury trial was held to determine guilt or innocence. Horn's due process rights were protected by the district court, and the consideration of the upward departure factor reached by a unanimous jury by applying a beyond a reasonable doubt standard is constitutionally valid under both *Apprendi* and *Gould*.

On this issue, we finally point to the decision of *State v. Cody*, 272 Kan. 564, 35 P.3d 800 (2001), where Cody pled guilty to criminal charges, and the court imposed an upward departure sentence based on Cody's admissions, rather than based on facts found beyond a reasonable doubt by a unanimous jury. In reversing the sentence, the *Cody* court held that under *Apprendi*, a plea of guilty to the elements of a criminal offense does not constitute either an admission or a waiver of his or her due process rights. 272 Kan. 564, Syl. ¶ 1; see *State v. Kneil*, 272 Kan. 567, 35 P.3d 797 (2001).

Horn's due process rights were recognized and protected by the procedure followed in this case. All applicable issues were considered by the jury, and the court had valid authority to enter the upward durational departure sentence in this case.

Horn next makes three related arguments concerning the use of the existence of a fiduciary relationship as an aggravating factor in entering an upward durational departure sentence.

The first is that the aggravating factor of the existence of a fiduciary relationship is unconstitutionally vague and overbroad because it is undefined, fails to give notice, and encompasses a wide scope of individuals. As with Horn's first issue, it is questionable if it was raised below. Although he admits the magic words "vague

and overbroad" may not have been used, he contends that he raised the issue when he argued that the Kansas Supreme Court had not defined "fiduciary relationship."

Despite the paucity of authority and argument made below and on appeal, we consider this issue as a part of our obligation to protect Horn's fundamental rights. The question of whether a statute is constitutional is a question of law over which an appellate court has unlimited review. The constitutionality of a statute is presumed. All doubts must be resolved in favor of its validity, and before the act may be struck down, it must clearly appear that it violates the Constitution. In determining constitutionality, it is a court's duty to uphold a statute under attack rather than defeat it. If there is any reasonable way to construe the statute as constitutionally valid, unless its infringement of the superior law is clear beyond a reasonable doubt, it should be upheld. *City of Wichita v. Hackett*, 275 Kan. 848, 853, 69 P.3d 621 (2003); *State v. Whitesell*, 270 Kan. 259, Syl. ¶ 1, 13 P.3d 887 (2000).

Under K.S.A. 21-4716(c)(2), there is a nonexclusive list of aggravating factors that the district court can rely on as compelling reasons for an upward departure sentence. Among these factors is: "The offense involved a fiduciary relationship which existed between the defendant and the victim." K.S.A. 21-4716(c)(2)(D).

A two-part test is used to determine whether a statute is unconstitutionally vague. First, we consider whether the statute conveys a sufficiently definite warning of the proscribed conduct when measured by common understanding and practice. Second, we consider whether the statute adequately guards against arbitrary and discriminatory enforcement, which embodies the requirement that a legislature establishes minimal guidelines to govern law enforcement. *State v. Rupnick*, 280 Kan. 720, 737, 125 P.3d 541 (2005).

A statute is not invalid for vagueness or uncertainty where it uses words of commonly understood meaning. *State v. Rose*, 234 Kan. 1044, 1046, 677 P.2d 1011 (1984). The heart of the test for vagueness is a commonsense determination of fundamental fairness. *Hearn v. City of Overland Park*, 244 Kan. 638, 642, 772 P.2d 758, *cert. denied* 493 U.S. 976 (1989).

There have been a few Kansas cases that have applied the fiduciary relationship as an aggravating factor. See, *e.g.*, *State v. Martin*, 285 Kan. 735, 175 P.3d 832 (2008) (fiduciary relationship between mother and 16-year-old son, she handed a loaded gun and urged him to shoot at an occupied house, which he did, as she drove by); *State v. Ippert*, 268 Kan. 254, 995 P.2d 858 (2000) (defendant father victimized his children who were dependent on him for support and protection); *State v. Sprinkle*, 31 Kan. App. 2d 45, 48, 59 P.3d 1039 (2002), *rev. denied* 275 Kan. 968 (2003) (no fiduciary relationship between police officer convicted of nonresidential burglary and victim because there was no direct, personal relationship of some duration with the victim that would have led to a relationship of trust).

The Kansas Supreme Court cited *Ippert* in *Gould* in recognizing a fiduciary relationship may be a factor for supporting an upward departure. *Gould*, 271 Kan. at 413. Justice Abbott in his *Gould* dissent recognized the validity of a fiduciary relationship when he wrote:

"We have defined 'fiduciary relationship' as follows:
" 'The term "fiduciary relationship" refers to any relationship of blood, business, friendship, or association in which one of the parties places special trust and confidence in the other. It exists in cases where there has been a special confidence placed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one placing the confidence. A fiduciary has the duty to act in good faith.' *Hawkinson v. Bennett*, 265 Kan. 564, Syl. ¶ 4, 962 P.2d 445 (1998)." 271 Kan. at 415.

The existence or absence of a fiduciary relationship is to be determined on a case-by-case basis as is shown by the results in *Ippert*, *Martin*, and *Sprinkle*. The term "fiduciary relationship" is not vague or overbroad. Properly instructed, a jury of persons of common intelligence can determine whether a fiduciary relationship exists under the facts in a given case.

K.S.A. 21-4716(c)(2)(D) is not unconstitutionally vague or overbroad.

Horn next argues that the existence of a fiduciary relationship is not an appropriate factor for crimes of aggravated indecent liberties and aggravated sodomy. He claims this results in lesser sen-

tences in cases of stranger molestation than might be entered in family molestation cases.

This is an argument to be presented to the legislature and not to this court. In effect, he asks us not to follow *Ippert*, which we have no right or authority to do unless there is an indication our Supreme Court is departing from its position. See *State v. Singleton*, 33 Kan. App. 2d 478, 488, 104 P.3d 424 (2005). As *Ippert* said: "A fiduciary relationship existing between the defendant and the victim is a statutory factor that may be considered when sentencing *any person*, including a parent, under the provision of [the aggravated indecent liberties statute]." (Emphasis added.) 268 Kan. 254, Syl. ¶ 5.

Finally, Horn argues the district court failed to consider whether the existence of a fiduciary relationship was a proper factor to consider in this case. Horn suggests there should have been a pretrial hearing to determine if the fiduciary relationship factor should be utilized.

This argument was not made below, and we are obligated to presume that sufficient findings were made to support the court's actions. See *Dragon v. Vanguard Industries*, 282 Kan. 349, 356, 144 P.3d 1279 (2006). The trial judge gave the matter proper consideration and stated: "I can't decide whether there is a fiduciary relationship as a matter of law," having heard no evidence on the issue. The judge correctly ruled it was a matter to be considered by a jury as is mandated by *Apprendi* and *Gould*.

The district court is not required to make a pretrial analysis of whether a fiduciary relationship is a proper factor to be presented to the jury. It is one of the nonexhaustive mitigating and aggravating factors listed in the sentencing guidelines, which is sufficient. See K.S.A. 21-4716(c)(1)-(2).

Next, Horn argues the district court abused its discretion in admitting evidence of the sex crimes he perpetrated upon and committed with C.T.P. He argues this evidence should have been prohibited or tightly limited during the sentencing proceedings. Horn maintains the evidence of the sex acts was highly prejudicial because of the extreme danger that a jury will lower its burden of proof or wish to increase the sentence based on the nature of the

crimes instead of focusing on the existence of the aggravating factor.

When reviewing a trial court's decision to admit evidence, an appellate court first determines whether the evidence is relevant. Once relevance is established, an appellate court must apply the evidentiary rules governing the admission and exclusion of evidence as a matter of law or in the exercise of the trial court's discretion, depending on the contours of the evidentiary rule question. When the issue involves the adequacy of the legal basis for the trial court's decision, the issue is reviewed using a de novo standard. *State v. Gunby*, 282 Kan. 39, 47-48, 144 P.3d 647 (2006). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *State v. Reed*, 282 Kan. 272, 280, 144 P.3d 677 (2006).

All relevant evidence is admissible. K.S.A. 60-407(f). "Evidence is relevant if it has any tendency in reason to prove any material fact. K.S.A. 60-401(b). To establish relevance, there must be some material or logical connection between the asserted facts and the inference or result they are intended to establish. [Citation omitted.]" *Gunby*, 282 Kan. at 47. The party asserting the trial court abused its discretion bears the burden of showing such abuse. *State v. Edgar*, 281 Kan. 30, 38, 127 P.3d 986 (2006).

Admitting evidence of the sex acts, which became a part of the relationship between Horn and his victim, is not like admitting prior crimes evidence to show a propensity to commit the crime currently charged.

In this case, evidence of Horn's sex acts with C.T.P. is relevant to the issue of whether there was a fiduciary relationship because they tend to show the extent of the relationship. The sex acts tend to prove material facts relevant to the fiduciary relationship. See K.S.A. 60-401(b). The sexual interaction is relevant as a large component of the lengthy relationship. The district judge correctly analyzed the issue when it said: "Because I don't believe you can separate the relationship generally from the fiduciary duty that is

a part of the relationship. I don't think you can eliminate all evidence of a sexual relationship."

The district court did not abuse its discretion in admitting evidence of the sex acts between Horn and C.T.P. as evidence supporting the establishment of a fiduciary relationship between the parties.

Horn next argues, for the first time on appeal, that his rights of confrontation under the Sixth Amendment to the United States Constitution were violated when the district court allowed the video of C.T.P.'s statements to be played when C.T.P. had not testified about the crimes at the sentencing hearing. C.T.P. did testify at the departure hearing about his relationship with Horn, but he did not testify concerning any of the specific sexual activity.

When the prosecutor moved to admit the videotape of the statements C.T.P. made to Jennifer Coughlin, an interview specialist at the Sunflower House, defense counsel objected. But, the objections were that the sexual activity was not relevant, it was cumulative, and there were no statements on the tape that in any way touched on any fiduciary issue. The district court overruled the objection, finding the evidence of sexual conduct was relevant to the proceeding.

Horn recognizes the State is correct in pointing out that our long-time rule is that a party may not object to evidence on one ground at trial and on a different ground on appeal. See *State v. Engelhardt*, 280 Kan. 113, 127, 119 P.3d 1148 (2005). While we are not obligated to address this issue, we do so briefly because it has no merit.

The State makes two convincing arguments why there is no Confrontation Clause violation here. First, there is case law that the *Crawford v. Washington*, 541 U.S. 36, 53-54, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), confrontation requirements are not applicable to postconviction proceedings. See *United States v. Luciano*, 414 F.3d 174, 178-79 (1st Cir. 2005); *United States v. Rondeau*, 430 F.3d 44, 47 (1st Cir. 2005).

Even more important is the fact that C.T.P. testified at the departure hearing. He was cross-examined by defense counsel. Even

after the video was admitted, defense counsel had the opportunity of cross-examining C.T.P. if he desired to do so.

Horn was given adequate opportunity to confront C.T.P. under the Confrontation Clause. He chose to avoid what might have been an uncomfortable or unproductive confrontation with C.T.P. "A litigant may not invite and lead a trial court into error and then complain of the trial court's action on appeal. [Citation omitted.]" *State v. Kirtdoll*, 281 Kan. 1138, 1150, 136 P.3d 417 (2006).

There is no Sixth Amendment violation here.

Horn next makes several arguments concerning the jury instructions given by the court. He principally argues his due process rights were violated by the fact that the jury instructions failed to guide and focus the jury on the aggravating factor instead of distracting them with irrelevant issues regarding guilt.

When a defendant objects to instructions, our court is required to consider the instructions as a whole and not isolate any one instruction. Even if erroneous in some way, instructions are not reversible error if they properly and fairly state the law as applied to the facts of the case and could not have reasonably misled the jury. *Edgar*, 281 Kan. at 54.

Horn raised a specific objection to instruction No. 11, and after hearing his arguments, the court added the last sentence to the definition of fiduciary relationship, which as given stated:

"A fiduciary relationship is a relationship of blood, business, friendship, or association in which one party places special trust or confidence in the other. It exists where there has been a special confidence placed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one placing the confidence.

"The mere fact that an adult is interacting with a child, by itself, does not create a fiduciary relationship. Something more, in which special trust or confidence is placed in the fiduciary, is required.

"A fiduciary has a duty to act primarily for the benefit of the other person, who has placed his or her special confidence in the fiduciary. A fiduciary relationship implies a condition or superiority of one of the parties (the fiduciary) over the other. Generally, in a fiduciary relationship, the property, interest, or authority of the other person is placed in the charge of the fiduciary. In addition, as a general rule, a fiduciary relationship is established only when it is shown that the confidence placed by one person in another actually was accepted by that party; merely placing confidence in another does not, by itself, create a fiduciary relationship."

Horn attempts to remake his vagueness argument, which we have previously rejected. He suggests the instruction should have said "mere friendship or respect does not create a fiduciary relationship." There is no pattern instruction covering fiduciary relationship, but the instruction given adopts language from *Hawkinson v. Bennett*, 265 Kan. 564, Syl. ¶ 4, 962 P.2d 445 (1998), which we have previously cited, and provides sufficient guidelines which the jury in this case could utilize in deciding the issues that were raised.

Additionally on appeal, Horn argues that jury instruction No. 10 did not advise the jury that the severity level of the crime was already taken into account in determining the presumptive sentence. He also argues the jury instructions setting forth the elements of all the crimes, instruction Nos. 14-21 were just another opportunity for the State to parade the sex acts before the jury and distract it from focusing on the fiduciary relationship and not the elements of guilt. Horn did not object to the instructions now complained of on appeal.

Therefore, our review of these instructions is limited to determining whether the challenged instructions are clearly erroneous. *State v. White*, 284 Kan. 333, 346, 161 P.3d 208 (2007). We are to find instructions clearly erroneous only if we are firmly convinced there is a real possibility the jury would have rendered a different verdict without the error. *State v. Hoge*, 276 Kan. 801, 817, 80 P.3d 52 (2003).

Instruction No. 10 stated:

"If you unanimously find beyond a reasonable doubt that one or more of the offenses involved a fiduciary relationship between the defendant and the victim, then the Court may increase the defendant's sentence for that offense above the presumptive sentence otherwise provided by law. The length of the defendant's sentence, including any increase due to the existence of a fiduciary relationship, is a matter for determination by the Court.

"If you are unable to agree that one or more offenses involved a fiduciary relationship between the defendant and the victim, then the defendant will receive the presumptive sentence provided by law for that offense or those offenses."

Jury instruction No. 10 mirrors PIK Crim. 3d 71.04, and the Notes on Use that follow 71.04 state that this instruction should

be given in all upward departure cases. We hold it is not clearly erroneous. Jury instruction Nos. 14-21 set forth the elements of the crimes of conviction and are also not clearly erroneous. There is no merit in Horn's arguments concerning these instructions.

There is merit in Horn's argument that the district court erred in failing to give a cautionary instruction that the evidence of guilt of the sex crimes may be used only in considering whether the prosecution established beyond a reasonable doubt that a fiduciary relationship existed. Horn recognizes no such instruction was requested but suggests this argument should be reached to serve the ends of justice and prevent a denial of fundamental rights.

Although Horn does not argue that we should consider this issue under a clearly erroneous standard, the State says the failure is not clearly erroneous and points us to K.S.A. 2006 Supp. 21-4718(b)(7), which states that even if the jury found an aggravating factor, the sentencing court is not required to impose an upward durational departure.

Horn argues that the case at hand presents legal issues of first impression and the cautionary instruction is necessary to focus the jury on the aggravating factor only—not on the crime. We agree this is an important issue that we must consider on appeal.

Horn argues this situation is like a case where the trial court has admitted prior crimes evidence pursuant to K.S.A. 60-455, which requires a limiting instruction following PIK Crim. 3d 52.06 to be given. See *State v. Garcia*, 285 Kan. 1, 12, 169 P.3d 1069 (2007) (citing *Gunby*, 282 Kan. at 48, 56-57). As the court in *Gunby* explained: "These safeguards are designed to eliminate the danger that the evidence will be considered to prove the defendant's mere propensity to commit the charged crime." 282 Kan. at 48. To paraphrase this holding, an instruction is necessary to eliminate the danger that the evidence of the crime will be used to prove the existence of any aggravating factor.

However, the mere assumption that a cautionary instruction is required fails to recognize the fundamental difference between testimony which relates directly to the relationship between the defendant and the victim and K.S.A. 60-455 evidence that relates to crimes or bad acts committed by the defendant against third

parties. We recognize this clear difference between evidence of the direct relationship between Horn and C.T.P. and what might have been offered under one of the K.S.A. 60-455 exceptions as a valid argument for a holding that no cautionary instruction was required.

Such a result is highly unsatisfactory, as Horn's defense counsel attempted at every instance to restrict the use of evidence of the crimes perpetrated against C.T.P. The request of a cautionary instruction may even have been thought to be an admission of admissibility of evidence that was claimed not to be relevant and unduly prejudicial.

In this case, there was not minimal mention of the sex acts and their existence was part of the prosecutor's final arguments. We have held that admission of the evidence of the sexual conduct was proper and consistent with that holding. We also hold that under the facts of this case, a cautionary instruction should have been given. Such an instruction may not be required under different evidence and facts. But, having held that a limiting instruction should have been given in this case does not mean that reversal of the district court is required.

As we have earlier stated, appellate review of the failure to give an instruction which is not submitted or objected to must be considered under a clearly erroneous standard. Instruction errors are clearly erroneous only if the reviewing court is firmly convinced that there was a real possibility that the jury would have rendered a different verdict if the instruction error had not occurred. *State v. Hunt*, 285 Kan. 855, Syl. ¶ 7, 176 P.3d 183 (2008).

If we were to treat this error in the same manner as the failure to give a limiting instruction under K.S.A. 60-455, we reach the same standard of requiring reversal only if clearly erroneous. See *Gunby*, 282 Kan. at 57-59 (explaining the death of the automatic reversal requirement and the adoption of a clearly erroneous standard).

Under the facts of this case, we fail to see how there is a real possibility that the jury would have reached a different verdict if the purported instruction error, *i.e.* the lack of a limiting instruction, had not occurred. See *State v. Cooperwood*, 282 Kan. 572,

580-82, 147 P.3d 125 (2006) (example of such an analysis relating to the failure to give PIK Crim. 3d 52.08). The extent of Horn's involvement with C.T.P.'s family and his individual interaction with C.T.P. was overwhelming. The trial court's failure to give a cautionary instruction was not clearly erroneous.

Horn next argues the district court erred in denying his motion for judgment of acquittal and the companion argument in a later issue that there was not sufficient evidence of a substantial and compelling nature to support the verdict finding the existence of a fiduciary relationship.

In reviewing the decision on a motion for a judgment of acquittal, an appellate court examines the sufficiency of the evidence to support the conviction. In a criminal case, the standard for determining sufficiency of the evidence is whether, after review of all the evidence, viewed in a light most favorable to the State, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Cavaness*, 278 Kan. 469, 479, 101 P.3d 717 (2004).

The same principles apply under a sufficiency analysis for review of an aggravated departure sentence. Upon a challenge to a departure sentence, an appellate court applies a mixed standard of review. A reviewing court first examines the record to see whether there is substantial competent evidence to support the district court's articulated reasons for granting a sentencing departure. The appellate court then determines, as a matter of law, whether the district court's reasons for departure constitute substantial and compelling reasons justifying a deviation from a presumptive sentence. *State v. Murphy*, 270 Kan. 804, 806, 19 P.3d 80 (2001).

Horn argues the facts in this case never elevated him to a position beyond a normal duty of care from one person to another. He points to the lack of any formal agreement as to his care of the boys, lack of authority to discipline, and lack of authority regarding what to do in an emergency.

When we examine all the evidence in the light most favorable to the prosecution, we hold that a jury could find the existence of a fiduciary relationship beyond a reasonable doubt, and so the motion for acquittal was properly overruled.

The evidence showed Horn was accepted into C.T.P.'s family and was generous to the boys. He was regularly entrusted with their care over long periods of time, including overnight during the summer and weekends. He took C.T.P. race car driving, rock climbing, to music lessons, to church, and taught him to ski. C.T.P.'s mother testified that Horn "became like a member of the family." There was sufficient competent evidence to support the trial court's decision and the jury's verdict.

The next argument Horn makes is that the district court erred in not requiring mitigating evidence to be submitted along with aggravating evidence, which he claims violated his fundamental rights of due process and equal protection.

This argument was not raised below, and constitutional grounds for reversal are not properly before us for review. *State v. Alger,* 282 Kan. 297, 304, 145 P.3d 12 (2006). However, we consider this argument because there is nothing in the record indicating that Horn was denied the opportunity to present any evidence he wished to present.

K.S.A. 21-4718(b)(5) provides: "In the upward durational departure sentence proceeding, evidence may be presented concerning any matter that the court deems relevant to the question of determining if any specific factors exist that may serve to enhance the maximum sentence." Horn did not present any mitigating evidence for consideration by the jury.

Additionally, as the State points out, defense counsel did not offer any proffer of excluded evidence. See *State v. Deal,* 271 Kan. 483, 489-90, 23 P.3d 840 (2001) (the failure to make a proffer of excluded evidence precludes appellate review); K.S.A. 60-405. This issue has absolutely no merit as Horn was given every reasonable opportunity to present any mitigating evidence he chose to present. The fact he did not choose to do so precludes this issue from having any validity.

Last, Horn argues the district court failed to make the proper and required finding that the aggravating factor was substantial and compelling. *State v. Martin,* 285 Kan. 735, Syl. ¶¶ 1-3, 175 P.3d 832 (2008), teaches us:

"An appellate court's review of dispositional departure sentences is limited to whether the sentencing court's findings of fact and reasons justifying a departure (1) are supported by the evidence in the record and (2) constitute substantial and compelling reasons for departure. K.S.A. 21-4716(d).

"Appellate court analysis of whether a sentencing court's reasons for departure are substantial and compelling consists of two parts: First, are the reasons given valid departure factors; second, are the reasons, as a whole, substantial and compelling reasons for departure in a given case?

"Whether the factors relied upon by the sentencing court constitute substantial and compelling reasons for departure is a question of law."

The parties make significantly different arguments on this issue.

Horn contends that because the district court has the discretion to enter a departure sentence once an aggravating factor has been established, the district court must then engage in the proper analysis before finding that the factor is substantial and compelling. See K.S.A. 21-4718(b)(7) (when the jury finds an aggravating factor, "the defendant *may* be sentenced" to a departure sentence [Emphasis added.]). Horn states that the district court talked extensively prior to sentencing but never specifically set forth the reasons why a "fiduciary relationship" was a substantial and compelling reason to depart.

In countering this argument, the State cited *State v. Snow,* 282 Kan. 323, 144 P.3d 729 (2006), and argued K.S.A. 21-4720(c) is not applicable to Horn's sentence because the district court departed based on aggravating factors found by a jury. K.S.A. 21-4720(c)(1), states: "The court may depart from the presumptive limits for consecutive sentences only if the judge finds substantial and compelling reasons to impose a departure sentence for any of the individual crimes being sentenced consecutively."

In his reply brief, Horn argues he is not claiming the district court departed without a jury making the proper determination; he contends that after the jury found the aggravating factor, the district court did not make an independent analysis of whether the factor was substantial and compelling enough to enter a departure sentence.

We initially note that Horn made no objection below to the court's failure to make a proper finding. In general, a litigant must object to the absence of findings of fact and conclusions of law to

preserve the issue for appeal. *Dragon v. Vangard Industries*, 282 Kan. 349, 356, 144 P.3d 1279 (2006). We question whether Horn has the obligation to request findings that are directly adverse to his arguments on appeal and might, in fact, justify his lengthy sentence.

K.S.A. 21-4718(a)(4) provides: "In each case in which the court imposes a sentence that deviates from the presumptive sentence, the court shall make findings of fact as to the reasons for departure as provided in this subsection regardless of whether a hearing is requested."

We have reviewed the sentencing hearing in its entirety. Statements were made by the victim's father, the children of the defendant, a pastor, and by the defendant himself.

The sentencing record shows that the judge had a clear understanding of the obligations placed upon him by the statutes governing sentencing for multiple convictions and where the necessary factual findings had been made by a unanimous jury beyond a reasonable doubt of a factor which would justify an upward durational departure.

The sentencing judge discussed the requirements and limitations imposed under K.S.A. 21-4720(c). At sentencing, the court stated that "because of the jury's finding with respect to a fiduciary duty, the Court also has the ability to enhance the sentences beyond [the guidelines sentence]." The district court commented on the lengthy relationship between Horn and C.T.P. The court stated there was ample evidence to support a fiduciary relationship.

While the court did not specifically state that the upward durational departure sentence was being entered because the fiduciary relationship was a substantial and compelling factor and the better practice would be for the sentencing court to do so, this was the rationale expressed in such statements as the following:

"In the presentation today, including the victim statements that were submitted to the Court in the presentence investigation report, it is clear that there has been an enormous impact by the offenses in this case. There is a direct impact that simply cannot be measured on the boy who was abused. . . . He was extremely young, extremely vulnerable and he remains extremely troubled as of this date."

The court specifically looked at the duty which exists in sentencing to protect the public from future harm. The court further said: "There is nothing in the statements that were made today by Mr. Horn that would suggest that he understands the real issues here or that he is likely to be safe if he were in the community."

The only departure factor available to the district court was violation of a fiduciary relationship, which had been found by a properly instructed jury. The upward durational departure sentence was lawfully entered, and the acts of the sentencing court in doing so are approved.

The district court is affirmed.